653 So.2d 1030 (1995)
Bernadette AMENTE, et al., Petitioners,
v.
Willie B. NEWMAN, M.D., et al., Respondents.
No. 83620.
Supreme Court of Florida.
April 20, 1995.
H. Scott Bates of Morgan, Colling & Gilbert, P.A., Orlando, for petitioner.
Jennings L. Hurt III, Randall M. Bolinger and Michael V. Hammond of Rissman, Weisberg, Barrett, Hurt, Donahue & McLain, P.A., Orlando, for respondents.
*1031 GRIMES, Chief Justice.
We review Newman v. Amente, 634 So.2d 305 (Fla. 5th DCA 1994), because of its certified conflict with Amisub, Inc. v. Kemper, 543 So.2d 470 (Fla. 4th DCA 1989), and Ventimiglia ex rel. Ventimiglia v. Moffit, 502 So.2d 14 (Fla. 4th DCA 1986). We have jurisdiction under article V, section 3(b)(4) of the Florida Constitution.
Dr. Willie B. Newman treated Bernadette Amente during her prenatal period and the delivery of her minor child. Dr. Newman termed Amente's pregnancy high-risk because she weighed over 300 pounds. Dr. Newman opted to use a regular delivery bed rather than a drop-down delivery bed when Amente gave birth. The Amentes' child is now afflicted with Erb's palsy, a brachial plexus injury, which the Amentes allege resulted from Dr. Newman's negligent obstetrical care and treatment.
The Amentes sought discovery in the medical malpractice lawsuit they filed against Dr. Newman, requesting production of the complete medical records for all of Dr. Newman's "markedly obese" patients giving birth between January 1, 1989, and December 31, 1990. The Amentes specifically requested that all patient-identifying information be redacted (removed or blacked out) from the medical records prior to production. The trial judge granted the Amentes' request for production upon the condition that the Amentes reimburse Dr. Newman for the cost of retrieval and redaction of the records.
Dr. Newman petitioned the Fifth District Court of Appeal for a writ of certiorari to review the discovery order, asserting that the request was too burdensome and would force him to create records that do not now exist. Dr. Newman also asserted that the confidentiality of the patient and physician relationship would be invaded by the production of evidence not relevant to the lawsuit. The district court of appeal found that the discovery request was not burdensome and did not require the creation of new records. However, it held that the trial court erred when it ordered production of the records because (1) the request did not comply with section 455.241, Florida Statutes (1991), (2) the Amentes had failed to show that the patient records were relevant and that the relevancy outweighed the patients' statutory right to confidentiality of their medical files, and (3) the order violated the patients' constitutional rights to be free from governmental intrusion into their private lives, as set forth in article I, section 23, of the Florida Constitution. The court granted the writ and quashed the discovery order.
In Amisub, the Fourth District Court of Appeal denied a petition for writ of common law certiorari which sought to set aside an order compelling the defendant doctor to produce copies of the records of other patients who underwent certain specified procedures on the same day as the plaintiff's decedent. Amisub, 543 So.2d at 470. In Ventimiglia, the same court denied a petition for writ of certiorari seeking to vacate an order compelling a physician-witness to produce the records of other patients who had been treated for conditions similar to that suffered by the claimant. Ventimiglia, 502 So.2d at 14. In each case, the trial court had ordered that the records be redacted in order to protect the patients' identities.
While the Fourth District Court of Appeal has allowed discovery of a non-party's medical records, the Second and Third District Courts of Appeal have held that such records are not discoverable. See Leikensohn v. Cornwell, 434 So.2d 1030 (Fla. 2d DCA 1983) (medical malpractice defendant could not be compelled to answer interrogatory requesting non-party patient's initials, date of surgery, and name of hospital where surgery was performed); North Miami Gen. Hosp. v. Royal Palm Beach Colony, Inc., 397 So.2d 1033, 1035 (Fla. 3d DCA 1981) (hospital was not required to answer interrogatory concerning hospitalization records of patients not involved in the suit because it would "impermissibly compromise their right to the confidentiality of their medical records"); Teperson v. Donato, 371 So.2d 703, 704 (Fla. 3d DCA 1979) (order requiring production of non-party's medical records was error because the question in medical malpractice is whether the doctor used a standard of care commensurate with that used in the community, and this question can be answered by methods other than invading the medical records *1032 of strangers); Argonaut Ins. Co. v. Peralta, 358 So.2d 232, 233 (Fla. 3d DCA), cert. denied, 364 So.2d 889 (Fla. 1978) (order requiring production of medical records and photographs of persons not party to the suit was error because "to permit a party to inject into the public record medical information of a stranger to the suit, under the guise that it has a bearing on the competency of the doctor, would be unconscionable").
We first address the Amentes' argument regarding the applicability of the notice requirement in section 455.241(2). Section 455.241(2) provides in pertinent part:
Such [medical] records may not be furnished to, and the medical condition of a patient may not be discussed with, any person other than the patient or [the patient's] legal representative or other health care providers involved in the care and treatment of the patient, except upon written authorization of the patient... . Such records may be furnished in any civil or criminal action, unless otherwise prohibited by law, upon the issuance of a subpoena from a court of competent jurisdiction and proper notice to the patient or his legal representative by the party seeking such records. Except in a medical negligence action when a health care provider is or reasonably expects to be named a defendant, information disclosed to a health care practitioner by a patient in the course of the care and treatment of the patient is confidential and may be disclosed only to other health care providers involved in the care and treatment of the patient, or if permitted by written authorization of the patient or compelled by subpoena at a deposition, evidentiary hearing, or trial for which proper notice has been given.
(Emphasis added).
In applying the statute to the request for discovery, the court created an anomaly in that the Amentes could not give the requisite notice because they did not know the patients' names and addresses, yet they could not be given the names and addresses without revealing the patients' identities. If possible, the courts should avoid a statutory interpretation which leads to an absurd result. City of St. Petersburg v. Siebold, 48 So.2d 291, 294 (Fla. 1950). We therefore hold that the notice requirement of section 455.241(2) is inapplicable to situations such as this as long as the medical records are properly redacted so as to protect the patient's identity.
We next address the Amentes' contention that the information they seek is relevant. The concept of relevancy is broader in the discovery context than in the trial context. Rule 1.280(b)(1), Florida Rules of Civil Procedure, which delineates the proper scope of discovery, provides:
Parties may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter of the pending action, whether it relates to a claim or a defense of the party seeking discovery or the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.
Thus, a party may be permitted to discover relevant evidence that would be inadmissible at trial, so long as it may lead to the discovery of admissible evidence.
As the basis for their request for discovery, the Amentes explain that Dr. Newman has stated that he relied upon his past experience in delivering morbidly obese women without complication in selecting his delivery method for Mrs. Amente. They suggest that if other infants delivered by Dr. Newman have suffered injuries associated with this delivery method, such evidence may be relevant to show that Dr. Newman had notice that the method was deficient. The Amentes further point out that Dr. Newman has expressed the belief that his delivery method did not cause their child's injury but that he cannot explain what did cause the injury. They assert that if the medical records reveal that Dr. Newman utilized drop-down delivery beds with all his other morbidly *1033 obese patients and that no injuries occurred to the patients' infants, this evidence might be relevant to causation. Finally, because Dr. Newman claims he has followed this method for some time without injury occurring to the infants he has delivered, the Amentes argue that any discovery which reveals the opposite would be relevant for impeachment. We cannot say that the trial judge abused his discretion in holding that the Amentes' discovery request was directed toward relevant evidence.
The final issue involves the conclusion that the trial judge's order invaded the patient's constitutional right of privacy. There may be circumstances under which a person would have a constitutional privacy right with respect to his or her medical records. However, in this instance, we find that the patients' right of privacy and the confidentiality of the patients' medical records are protected by the trial judge's requirement that all identifying information be redacted from the medical records. In those cases where mere redaction of the medical records is deemed insufficient to protect the patients' right of privacy, the trial court, in its discretion, may also order the medical records sealed and allow only the parties' attorneys and medical experts to have access to the medical records.
Accordingly, we approve Amisub and Ventimiglia and disapprove Leikensohn, Argonaut, North Miami General Hospital, and Teperson to the extent they are inconsistent with this opinion. We quash the decision below and remand for further proceedings consistent with this opinion.
It is so ordered.
SHAW, KOGAN, HARDING, WELLS and ANSTEAD, JJ., concur.
OVERTON, J., concurs specially with an opinion.
OVERTON, Justice, concurring specially.
While I concur in the majority's opinion, I write separately to emphasize that nothing in this opinion should be read as diminishing the privacy rights of the non-party patients of the defendant. These patients are not participants in this lawsuit and, consequently, due process prohibits any reduction in their constitutionally protected rights. Furthermore, it is incumbent on the trial judge to use the broad discretion granted by the rules of procedure to fashion a discovery order that adequately safeguards the identities of the non-party patients. While the redaction of the patient names may be adequate to protect the non-party patients' identities in this instance, in other circumstances, such as where the doctor serves a more sparsely populated area, more information may have to be redacted from the records to ensure absolute anonymity. Cf. Rasmussen v. South Fla. Blood Serv., Inc., 500 So.2d 533 (Fla. 1987) (discovery order commanding disclosure of names and addresses of blood donors in attempt to find cause of AIDS was too broad; other less intrusive means were available).
Finally, the mere fact that a judge authorized the discovery of the medical records of non-party patients does not, under my reading of this opinion, immunize the parties from invasion-of-privacy claims by the non-party patients if the medical records are disclosed in such a manner that the identities of the non-party patients are revealed. If the identity of such a patient is revealed, whether directly, indirectly, or inadvertently, a claim for invasion of privacy could be established despite the existence of the court-ordered discovery. Furthermore, in addition to a civil suit by the non-party patients, the attorneys and parties may be subject to sanctions imposed by the court.