991 So.2d 932 (2008)
Brittany A. GRAHAM and Yolanda Graham, Petitioners,
v.
Kimberly V. Brown DACHEIKH, individually, and Ali Dacheikh, Respondents.
No. 2D07-5347.
District Court of Appeal of Florida, Second District.
August 20, 2008.
Rehearing Denied October 17, 2008.
Niurka J. Fernandez of Ramey & Kampf, P.A., Tampa, for Petitioners.
Robert T. Joyce of Joyce & Reyes, P.A., Tampa, for Respondents.
ALTENBERND, Judge.
Brittany Graham and Yolanda Graham, defendants in an automobile negligence action, seek a petition for writ of certiorari to quash a discovery order. The order compels Dr. Stephen Sergay, a neurologist who performed a medical examination of the plaintiff, Kimberly V. Brown Dacheikh, pursuant to Florida Rule of Civil Procedure 1.360, to produce all "reports of examiner" that he has prepared pursuant to that rule of procedure in any other lawsuit between 2004 and 2006. Although Dr. Sergay has been authorized to remove names and identifying information from the reports that he prepared regarding other people, the reports, otherwise in *933 their entirety, are to be provided to the attorneys without prior review in camera by the trial court and without any provisions for confidentiality. It appears that these medical reports of nonparties are desired not to discover evidence relevant to prove the plaintiffs' case, but merely to give their attorneys a basis to engage in impeachment of Dr. Sergay. We conclude that when the circuit court relied upon the holding in Amente v. Newman, 653 So.2d 1030 (Fla.1995), which is a distinguishable case, and refused to obey the express language of section 456.057(7), Florida Statutes (2006), it applied the wrong law. This order departs from the essential requirements of the law and causes irreparable injury to the privacy rights of nonparties who have been given no notice and no opportunity to be heard in this proceeding. Accordingly, we grant the petition and quash the order on review.
The underlying lawsuit in this case is an automobile negligence action filed by Kimberly and Ali Dacheikh against Brittany and Yolanda Graham. The record provided to this court in this certiorari proceeding does not detail the nature of the automobile accident or the extent of Ms. Dacheikh's injuries. In the course of discovery, however, Dr. Sergay performed a medical examination of Mrs. Dacheikh pursuant to rule 1.360.[1] The Dacheikhs obtained the examiner's report prepared by Dr. Sergay pursuant to rule 1.360(b), but they also sought extensive additional discovery directed to Dr. Sergay. The Dacheikhs served the Grahams with a "notice of taking records pick-up deposition duces tecum" which indicated they were issuing a subpoena duces tecum to Dr. Sergay that required him to produce (1) "[a] printout of any and all depositions done by Dr. Sergay for the calendar years 2004, 2005, and 2006 to the extent that such information is retrievable and/or available"; (2) "[a] list of cases wherein Dr. Sergay testified in trial (in person) for the calendar years 2004, 2005, and 2006 and the person or entity who requested his presence at trial to the extent such information is available or such a list is maintained"; and (3) "[a] copy of any written report Dr. Sergay wrote as a result of a Compulsory Medical Examination pursuant to F.R.C.P. 1.360 for the calendar years 2004, 2005, and 2006." As to request three, the Dacheikhs provided that Dr. Sergay could redact identifying information such as "the name of the patient, date of birth and/or social security number."
The Grahams filed a motion to quash this notice and any corresponding subpoena only to the extent of the information sought in request three. The motion to quash generally argued that the information sought in this request was "irrelevant, immaterial, overbroad, work product, trade secret, privileged and/or confidential in nature." The trial court specifically considered the privacy interests involved in the disclosure, denied the motion, and ordered production of the reports. The court's written order stated, "Dr. Sergay may redact any identifying information as to the person being examined," but also required "[t]he reports otherwise are to be left unadulterated." The Grahams then filed this certiorari proceeding.
In their petition for writ of certiorari, the Grahams challenge the order on a variety of bases: that the documents requested are not discoverable, relevant, or *934 admissible in the proceedings; that the request is unduly burdensome; and that the discovery invades the privacy of the nonparty patients.[2] The Dacheikhs respond, arguing that the request is appropriate in light of the Florida Supreme Court's decision in Amente, 653 So.2d 1030, which authorized the plaintiff in a medical malpractice action to obtain discovery of the medical records of nonparties who were the patients of the defendant doctor.
At this juncture, and based upon the limited scope of review permitted in a certiorari proceeding, we grant the petition solely on the ground that it departs from the essential requirements of the law in requiring the disclosure of confidential medical information of nonparties without notice to those parties as required by section 456.057(7), Florida Statutes (2006), and without adequate protections to protect the privacy rights of those nonparties under the Florida Constitution. Although we question whether the entire content of these reports should be discoverable given the limited potential relevancy of much, if not all of that content, we do not decide that issue.
The Dacheikhs argue that circuit courts are now routinely granting requests similar to the request made in this case. If so, we conclude that this discovery from expert witnesses is being authorized under an application of the wrong law. The unusual circumstances in Amente are not grounds for trial courts and litigants to routinely disobey the unequivocal requirements of section 456.057(7) when seeking discovery from expert witnesses.
Section 456.057(7) contains a broad prohibition preventing a health care practitioner who generates a medical record for a patient from furnishing that record to "any person other than the patient or the patient's legal representative or other health care practitioners and providers involved in the care or treatment of the patient, except upon written authorization of the patient." The statute provides for only limited, specific exceptions to this general rule that the patient must give written authorization before any record is released. Most notably, section 456.057(7)(a)(3) provides records may be furnished:
3. In any civil or criminal action, unless otherwise prohibited by law, upon the issuance of a subpoena from a court of competent jurisdiction and proper notice to the patient or the patient's legal representative by the party seeking such records.
Section 456.057 reinforces the requirements of subsection (7) in subsection (8):
(8) Except in a medical negligence action or administrative proceeding when a health care practitioner or provider is or reasonably expects to be named as a defendant, information disclosed to a health care practitioner by a patient in the course of the care and treatment of such patient is confidential and may be disclosed only to other health care practitioners and providers involved in the care or treatment of the patient, or if permitted by written authorization from the patient or compelled by subpoena at a deposition, evidentiary hearing, or trial for which proper notice has been given.
*935 In this case, the Dacheikhs made no effort to provide or to have the court provide "proper notice" to the affected patients. They did not argue that such notice was impossible. Indeed, the discovery the Dacheikhs were to receive without objection from their first two requests in the subpoena duces tecum would suggest that such notification would be possible thereafter. We note the Grahams' compliance with those first two requests raises substantial risks that the Dacheikhs' attorney could identify at least some of these patients when provided with the production of the items in the third request, even if their names and social security numbers were redacted.
The Dacheikhs did not comply with or ask the trial court to obey section 456.057 because they believed the statute was rendered inapplicable by the supreme court's opinion in Amente. We disagree. We conclude Amente is not controlling in this case for at least four reasons: (1) Amente was a medical negligence case; (2) the affected doctor was a party; (3) the discovery sought related to substantive issues in the case; and (4) the supreme court concluded that compliance with the statute was impossible.
In Amente, the plaintiff was a mother who sued her doctor claiming that the method he used to deliver her baby resulted in injury to the baby. The mother was obese and the claim of malpractice focused on the method of delivery of babies born to obese mothers. In discovery, the plaintiff sought records for all similarly obese patients who had given birth to babies under the defendant doctor's care during a two-year period. Thus, this information was sought not merely for impeachment of the defendant, but also in hopes that it would provide relevant evidence to prove the malpractice claim against the doctor.
In an opinion that resolved a conflict among the districts, the Florida Supreme Court permitted the discovery of nonparty medical records without notice to the nonparties in Amente, 653 So.2d 1030. The court noted that the statute, then codified at section 455.241(1), Florida Statutes (1991), required notice to the nonparties "by the party seeking such records." The court, however, was concerned that the plaintiff in the medical malpractice suit seeking the records was essentially in a Catch-22 position because she was unable to provide notice without the records, and unable to obtain the records without notice. Amente, 653 So.2d at 1032. The court concluded that the privacy of the nonparty patients whose medical records were provided was not unduly invaded because the trial court ordered all identifying information redacted. Id. at 1033.
There was nothing in Amente to suggest that these patients, who presumably had not been involved in prior litigation, could be identified from the information in these medical records. Unlike reports issued by physicians following an examination pursuant to rule 1.360, it would be unlikely that such medical records would contain details of an accident or prior medical history from which a patient could be identified. The supreme court added, "In those cases where mere redaction of the medical records is deemed insufficient to protect the patients' right of privacy, the trial court, in its discretion, may also order the medical records sealed and allow only the parties' attorneys and medical experts to have access to the medical records." Id. Justice Overton, writing separately, emphasized that the holding was not intended to diminish the privacy rights of the nonparty patients and that they were still free to sue anyone who invaded their privacy in the process of the permitted discovery. *936 Amente, 653 So.2d at 1033 (Overton, J., concurring specially).[3]
The circumstances of Amente required the supreme court to balance the plaintiff's right to have access to courts under procedures that required her to prove her common law claim of medical negligence against the rights of a limited group of similar patients whose identities were unknowable and whose privacy rights could be protected by adequate alternative means. The supreme court decided Amente based on section 455.241(1), which contained an express exception for "medical negligence claims" that at least weakened the statute's application in a medical negligence case like Amente.
By contrast, in this case, this discovery has been authorized in an automobile negligence case without any serious consideration given in the circuit court to the potential relevance or usefulness of these medical records. We recognize that discovery does not need to focus on admissible evidence, but normally it should be "reasonably calculated to lead to the discovery of admissible evidence." See Fla. R. Civ. P. 1.280(b)(1); Pusateri v. Fernandez, 707 So.2d 892 (Fla. 2d DCA 1998) (quashing a discovery request for medical records that appeared irrelevant to the issues in the litigation). From the record, it appears that the request involves medical records of more than one hundred patients claiming to suffer various types of neurological disorders allegedly caused by various accidents. It is not obvious that the content of a neurological examination of a person suffering from a neurological condition that is not comparable to Mrs. Dacheikh's and caused by some mechanism other than an automobile accident is reasonably calculated to lead to admissible evidence in her case.
The Dacheikhs claim they need this information to impeach Dr. Sergay. However, it would appear the documents requested would be inadmissible as collateral impeachment unless they demonstrate bias, corruption, or lack of competency of Dr. Sergay. See Charles W. Ehrhardt, Florida Evidence § 608.1 at 521 (2008 ed.); Lawson v. State, 651 So.2d 713, 715 (Fla. 2d DCA 1995). The Dacheikhs do not point to anything specific in a deposition of Dr. Sergay in this case that they hope to impeach with the use of these documents. Moreover, if the Dacheikhs intend to use these documents to provide a predicate for questions designed to prove that Dr. Sergay is biased and always renders an opinion favorable to the defense, we are unconvinced that they need to obtain copies of the medical history or descriptions of the physical examinations of all of these patients, as compared to the doctor's impression or conclusions at the end of his report.
The discovery in this case does not involve a narrowly tailored group of patients *937 whose identities can easily be concealed by redaction. The affected patients in this case have all had their identities compromised to some degree by prior litigation. These patients did not chose to see Dr. Sergay but were required to do so under a rule of procedure that expressly waived their evidentiary privileges only in "that action or any other involving the same controversy." Fla. R. Civ. P. 1.360(b)(2). If truly warranted in this case, it is likely that these patients could be contacted through the attorneys in the prior litigation so that they received prior notice and an opportunity to object to this disclosure.[4]
It is worth reflecting upon the fact that the courts have held that article I, section 23, of the Florida Constitution, creates an express right of privacy that is a fundamental right. The courts demand that the other branches of government honor this constitutional right by having a compelling state interest in order to impose upon privacy rights and that the imposition be accomplished in the least intrusive means. See Winfield v. Div. of Pari-Mutuel Wagering, 477 So.2d 544, 547 (Fla.1985). Indeed, Florida courts have sometimes restricted their own rulings to comply with these limitations. See In re Guardianship of Browning, 568 So.2d 4, 14 (Fla. 1990). The type of discovery requested in this case seems to be a situation in which the fundamental rights of the nonparties may require more restrictive protections, and thus less intrusive means, than those utilized by the trial court in the order we quash today.
The courts have been willing to allow extensive discovery of financial information to assist counsel in impeaching examining physicians and other experts by demonstrating the experts' economic ties to insurance companies or defense law firms. See Elkins v. Syken, 672 So.2d 517 (Fla. 1996); Allstate Ins. Co. v. Boecher, 733 So.2d 993 (Fla.1999); Morgan, Colling, & Gilbert v. Pope, 798 So.2d 1 (Fla. 2d DCA 2001). Such records provide opportunities for impeachment with little or no risk of invading the privacy rights of patients. It is, however, an entirely different matter when the discovery involves reports of physical examinations and medical histories provided by people who are not parties to the lawsuit. See generally Crandall v. Michaud, 603 So.2d 637, 640 (Fla. 4th DCA 1992), disapproved in part by Elkins, 672 So.2d 517.
Accordingly, we conclude that the holding in Amente does not eliminate the requirements of section 456.057 in standard personal injury lawsuits when the requested records are possessed by a physician who is not a party to the action. At the very most, the holding in Amente allows a court to override that language by providing adequate alternative means to protect other patients' privacy rights when a party has made a showing that the court cannot comply with the statute under circumstances that justify disobeying the statute. In this case, the compelled release of a large number of medical records belonging to nonparties who have received no notice of the disclosure under circumstances in which the party seeking the discovery did not offer an explanation justifying an override of the requirements of section 456.057 departs from the essential requirements of law. We therefore grant the petition for writ of certiorari and quash the order.
*938 Petition for writ of certiorari granted; order on review is quashed.
NORTHCUTT, C.J., and SALCINES, E.J., Senior Judge, Concur.
NOTES
[1] Plaintiffs' attorneys usually refer to these examinations as "compulsory" medical examinations, and defense attorneys usually call them "independent" medical examinations. Neither adjective is contained in the rule. This opinion avoids the use of either descriptive adjective and merely calls them examinations pursuant to rule 1.360.
[2] Either Dr. Sergay or one of the patients whose reports was to be produced could have filed an objection to this discovery. For practical reasons, precedent seems to give the defendant standing to raise these privacy concerns for the unidentified patients and the examining physician. See, e.g., Amente, 653 So.2d 1030; Pusateri v. Fernandez, 707 So.2d 892 (Fla. 2d DCA 1998); Syken v. Elkins, 644 So.2d 539 (Fla. 3rd DCA 1994), approved, 672 So.2d 517 (Fla. 1996).
[3] Notably, Amente was decided prior to the enactment of the Health Insurance Portability and Accountability Act of 1996 (HIPAA). See Pub.L. No. 104-191, 110 Stat.1936 (1996) (primarily codified in various sections of chapters 29 and 42 of the United States Code); 45 C.F.R. § 164.512. One cannot help but wonder whether Justice Grimes' discussion in the majority opinion in Amente would have been different if he had been writing the opinion after the requirements of HIPAA were in place. We do not base our ruling on HIPAA because chapter 45, section 164.512, Code of Federal Regulation, which implements portions of the act, allows production of protected health information in the course of any judicial proceeding in response to an order of a court. Even under HIPAA, however, if the records are produced during normal discovery they are typically produced in a manner that restricts the persons who may access the documents and requires their return at the end of litigation. See 45 C.F.R. § 164.512(e). The trial court's order in this case does not afford even that level of protection.
[4] We emphasize that we are not suggesting that this case necessarily warrants such intrusive discovery from an expert witness.