# FIFTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 5D2023-2105
LT Case No. 2022-CA-000577

_____

LOUIS C. MORGENIER, III,
HEALTHCARE DEVELOPMENT
PARTNERS OF AMERICA, LLC
f/k/a/ HEALTHCARE
DEVELOPMENT PARTNERS, INC.,
a Florida limited liability
company, and CITRUS COUNTY
ACO, LLC, d/b/a CITRUS ACO,
LLC, a Florida limited liability
company,

     Petitioners,

     v.

J. DICKERT POPULATION HEALTH
SERVICES LLC and A. DICKERT
POPULATION HEALTH SERVICES
LLC,

     Respondents.

_____

Petition for Certiorari Review of Order
from the Circuit Court for Citrus County.
Carol A. Falvey, Judge.

Houston S. Park, III, Andrew M. Feldman, Christopher J.
Fraga, and Charles G. Short, of Klein Park & Lowe, P.L.,
Miami, for Petitioners.

Kirk S. Davis, and Mark J. Bernet, Tampa, and Diane G. DeWolf, B.C.S., of Akerman LLP, Tallahassee, for Respondents.

June 21, 2024


PRATT, J.

On June 19, 2023, following a hearing, the trial court entered an order granting Respondents' third motion to compel discovery. The order requires Petitioners, who are defendants in the litigation, to produce to Respondents certain documents that Petitioners consulted in connection with developing a Physicians Outreach Program ("POP") and Enhanced Primary Care Program ("EPCP"). As relevant here, the ordered production includes "patient records (in native format)." Petitioners have filed a petition for a writ of certiorari to quash the order.

In their petition, Petitioners assert that the patient health records they consulted when developing the POP and EPCP are confidential medical records of nonparties who have not been notified of, and have not consented to, the disclosure of their medical records. They argue that the trial court's order departs from the essential requirements of the law because it places them in the untenable position of choosing between compliance with the order and compliance with section 456.057(7), Florida Statutes (2020), which safeguards patients' confidential health information. Respondents, on the other hand, contend that the ordered production is lawful because the trial court took reasonable steps to preserve patients' confidentiality, even though it did not order removal of their personal identifying information and otherwise required that the records be produced in native format.

Petitioners have chosen an appropriate vehicle to obtain review of the trial court's order. To receive a writ of certiorari, a petitioner must show: "(1) a departure from the essential requirements of the law, (2) resulting in material injury for the remainder of the case (3) that cannot be corrected on postjudgment appeal." *Reeves v. Fleetwood Homes of Fla., Inc.*, 889 So. 2d 812, 822 (Fla. 2004) (quotation marks and citation omitted). This standard is met where a court orders production of confidential

2

third-party medical records in a manner that would violate applicable legal protections for confidentiality. *See McKnight v. State*, 335 So. 3d 190, 191–92 (Fla. 5th DCA 2022); *Paylan v. Fitzgerald*, 223 So. 3d 431, 434 (Fla. 2d DCA 2017); *Tyson v. State*, 114 So. 3d 443, 444–45 (Fla. 5th DCA 2013). Thus, Petitioners' entitlement to certiorari relief turns on whether the trial court's order is consistent with section 456.057.

Section 456.057(7)(a) provides that, subject to certain enumerated exceptions, patient medical records "may not be furnished to . . . any person other than the patient, the patient's legal representative, or other health care practitioners and providers involved in the patient's care or treatment, except upon written authorization from the patient." § 456.057(7)(a), Fla. Stat. (2020). Respondents do not dispute whether the materials at issue qualify as confidential records within the meaning of the statute. Indeed, in their response, Respondents acknowledge that "[f]acially, the statute would seem to preclude" the production of the requested documents "insofar as they contain a third party patient's medical records, unless the patient first receives notice and provides written consent." Instead, Respondents raise a practical point: Respondents "cannot obtain patients' consent unless they know who they are, but they cannot know the identity of the patients unless they receive the records."

Respondents do not point to language in the statute that provides an exception for the practical problem they raise. Instead, they turn to precedent: *Amente v. Newman*, 653 So. 2d 1030 (Fla. 1995). There, the plaintiffs brought a medical malpractice claim against the doctor who delivered their child, alleging that the doctor's failure to use a certain kind of delivery bed caused the child's injury. *Id.* at 1031. During discovery, they sought "production of the complete medical records for all of [the doctor's] 'markedly obese' patients giving birth" during a two-year period. *Id.* The plaintiffs "specifically requested that all patient-identifying information be redacted (removed or blacked out) from the medical records prior to production." *Id.* The trial court ordered the requested production. *Id.* Aligning with the approach of the Second and Third Districts, our court granted a writ of certiorari and quashed the order, reasoning in part that the ordered production would circumvent the notice requirement of section

3

455.241(2), Florida Statutes (1991), the predecessor to section 456.057. *Id.* The Fourth District, on the other hand, had twice declined to issue the writ under materially similar circumstances. *Id.*

On review of our certification of conflict, the Florida Supreme Court approved the Fourth District's decisions, disapproved the Second and Third Districts', and quashed ours. *Id.* at 1033. The Court found inapplicable the statute's requirement that the party seeking the records must first give "proper notice to the patient or his legal representative" before compelling production. *Id.* at 1032 (emphasis and quotation marks omitted). It reasoned that "applying the statute to the request for discovery" would create "an anomaly in that the [plaintiffs] could not give the requisite notice because they did not know the patients' names and addresses, yet they could not be given the names and addresses without revealing the patients' identities." *Id.* To avoid this "absurd result," the Court held the statutory notice requirement "inapplicable to situations such as this *as long as the medical records are properly redacted so as to protect the patient's identity*." *Id.* (emphasis added).

*Amente* does not control the petition now before us. Here, the trial court did not order production of *redacted* records. Rather, it ordered production of records *in native format*; in other words, records that contain patients' personal identifying information. Respondents observe that the ordered production was subject to a confidentiality order. However, unlike redactions, a confidentiality order does not "protect the patient's identity" from disclosure, *id.*; it simply limits the number of persons to whom the patient's identity is disclosed.

Respondents, therefore, ask us to extend *Amente*. We decline to do so for three reasons.

First, *Amente* applied the absurdity doctrine, a contextual interpretive canon that must be applied very sparingly. We ought not brush aside the statutory text, debated and enacted by the people's representatives, based on our distaste for the result that it achieves. *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 237 (2012) (noting that overuse

of the absurdity doctrine leads to the "slippery slope" of "judicial revision" of legal texts "to make them (in the judges' view) more reasonable"). "Deciding what competing values will or will not be sacrificed to the achievement of a particular objective is the very essence of legislative choice," *Rodriguez v. United States*, 480 U.S. 522, 526 (1987), and "'the judiciary may not sit as a superlegislature to judge the wisdom or desirability of legislative policy determinations made in areas that neither affect fundamental rights nor proceed along suspect lines,'" *Fla. Patient's Compensation Fund v. Von Stetina*, 474 So. 2d 783, 789 (Fla. 1985) (quoting *City of New Orleans v. Dukes,* 427 U.S. 297, 303 (1976)). We must not treat the law as "a spirit disembodied from its letter." *T.G. United, Inc. v. AADD Properties, Inc.*, 371 So. 3d 396, 402 (Fla. 5th DCA 2023).

For these reasons, the absurdity doctrine has carefully crafted limitations. Indeed, since *Amente*, the Florida Supreme Court has made clear that we must follow "the 'supremacy-of-the-text principle'" when interpreting statutes, *Ham v. Portfolio Recovery Assocs., LLC*, 308 So. 3d 942, 946 (Fla. 2020), and it has treated ambiguity as a precondition for applying the absurdity doctrine, *see Hardee County v. FINR II, Inc.*, 221 So. 3d 1162, 1165 (Fla. 2017) (applying the doctrine "[w]here a statute is open to multiple interpretations"); *cf. id.* at 1168 (Lawson, J., specially concurring) (finding the majority's discussion of the absurdity doctrine "improper" because "[t]he text of the statute fully resolves this case"). The Court also has instructed that the absurdity doctrine must not be applied to "rewrite the statute, rather than correct a 'technical or ministerial error.'" *State v. Lewars*, 259 So. 3d 793, 801 (Fla. 2018) (quoting *State v. Wright*, 180 So. 3d 1043, 1048–49 (Fla. 1st DCA 2015) (Makar, J., dissenting from denial of certification)). Respondents all but concede that section 456.057 unambiguously requires notice and authorization here, and they point to no technical or ministerial error in the statutory text beyond the one that *Amente* corrected. Therefore, Respondents fail to establish any predicate for applying the absurdity doctrine. *See Lewars*, 259 So. 3d at 801; *FINR II, Inc.*, 221 So. 3d at 1165; *see also* Scalia & Garner at 237–38 (noting two limitations on the doctrine: "(1) [t]he absurdity must consist of a disposition that no reasonable person could intend," and "(2) [t]he absurdity must be reparable by changing or supplying a particular word or phrase

whose omission or inclusion was a technical or ministerial error," as distinct from "substantive errors arising from a drafter's failure to appreciate the effect of certain provisions").

Second, *Amente* itself carefully limited its holding to instances where patient records "are properly redacted so as to protect the patient's identity." 653 So. 2d at 1032; *see Newman v. Cuyler*, 664 So. 2d 352, 352 (Fla. 5th DCA 1995) (citing *Amente* for the proposition that a "discovery request for medical records of non-party patients is appropriate where trial court determines that request is relevant *and all identifying information of non-party patients is redacted from records*" (emphasis added)). As an intermediate court, we disregard such limiting language at our peril. That's especially true where the limiting language follows from the Court's application of the absurdity doctrine—a canon that must be carefully circumscribed to avoid undermining the supremacy-of-the-text principle.

Third, even if we accepted their premise that *Amente* established a more flexible rule, Respondents offer no record support for their assertion that redaction of patients' personal identifying information is infeasible due to the nature of the software program. Therefore, we lack a record basis to conclude that redaction could not satisfy both the statute, as construed by *Amente*, and Respondents' need for the material. We also think it unlikely that any difficulty in making redactions could not be surmounted with at least one tried-and-true method: printing out records on physical paper, manually making the redactions, and manually applying any necessary pseudonyms to disambiguate the data. *See* Fla. R. Civ. P. 1.280(d). If the software program does not accommodate *Amente* redactions, the answer is not to place the convenience of e-discovery above the unambiguous requirements of section 456.057. Instead, the parties must shoulder some inconvenience to ensure compliance with the statute.

Respondents counter that many of the records pertain to their own patients. They argue that section 456.057 poses no prior-authorization barrier to discovery of the unredacted records of their own patients. *See* § 456.057(7)(a)(1). Petitioners rightly concede the point. Therefore, our issuance of the writ shall be without prejudice to the court ordering native-format records of

6

Respondents' own patients, provided that such records can be identified and separated from the other patient records.

For the foregoing reasons, the trial court's order departed from the essential requirements of the law, inflicting a continuing material injury that cannot be remedied on appeal. We therefore grant the petition, issue the writ, and quash the order.

PETITION GRANTED; ORDER QUASHED.

MAKAR and KILBANE, JJ., concur.

———————————————

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

———————————————