# SIXTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 6D2024-1407
Lower Tribunal No. 2023-CA-002510 AN

_____

BRENDA VALYOU,

Petitioner,

v.

RONALD ESCUDERO NAVEDO,

Respondent.

_____

Petition for Writ of Certiorari to the Circuit Court for Osceola County.
Christine E. Arendas, Judge.

March 21, 2025

PER CURIAM.

Brenda Valyou sued Ronald Navedo based on general allegations he caused her "bodily injury" in an automobile accident. During discovery, Navedo served Valyou with two notices under Florida Rule of Civil Procedure 1.351 of his intent to subpoena several non-parties for various records including Valyou's medical records. These non-parties included a hospital, a chiropractor, and a dentist.

Valyou timely objected to the issuance of these subpoenas, relevantly asserting that production of the medical records would violate her privacy rights

under the Florida Constitution. Valyou requested the trial court either limit the breadth and scope of the subpoenas to documents that related to her "neck and back," or, in the alternative, conduct an in-camera review of the records. Following a hearing, the court overruled Valyou's objections. Because the trial court did not depart from the law's essential requirements given Valyou's failure to demonstrate the subpoenas had the high probability to result in the production of irrelevant medical records, we deny her ensuing petition for writ of certiorari on its merits.

As this Court stated in *CPPB, LLC v. Taurus Apopka City Center, LLC*, 375 So. 3d 327 (Fla. 6th DCA 2023), "certiorari is an extraordinary remedy" that is "available only in limited circumstances." *Id.* at 329 (quotations omitted). As such, a petition for writ of certiorari requires that the petitioner establish "(1) a departure from the essential requirements of the law, (2) resulting in material injury for the remainder of the case (3) that cannot be corrected on postjudgment appeal." *Id.* (quotations omitted). The last two prongs are related and "together are referred to as irreparable harm." *Id*. And, because a finding of irreparable harm is a "condition precedent" to certiorari jurisdiction, appellate courts normally "should analyze irreparable harm first to determine if jurisdiction exists before deciding whether the trial court's order departed from the essential requirements of law." *Id.* Valyou has asserted irreparable harm "because the improper disclosure of medical records causes a material injury that cannot be remedied on appeal." *See Dominguez v.*

2

*Omana*, 381 So. 3d 1271, 1273 (Fla. 6th DCA 2024). Thus, we have jurisdiction to address the merits of her amended petition.

In this petition, Valyou frames her "procedural concerns" as follows: "that the subpoenas had [1] no temporal limitation, [2] no limitation in scope, [3] no limitation indicating that they were for one-time use, and [4] that they stated on their face that they would disseminate Ms. Valyou's date of birth." As a preliminary matter, Valyou did not raise the one-time use or date of birth arguments to the lower court, so we do not consider them. *Sunset Harbour Condo. Ass'n v. Robbins*, 914 So. 2d 925, 928 (Fla. 2005) ("[I]n order to be preserved for further review by a higher court, an issue must be presented to the lower court and the specific legal argument or ground to be argued on appeal or review must be part of that presentation if it is to be considered preserved.") (quoting *Tillman v. State*, 471 So. 2d 32, 35 (Fla. 1985)).

We find Valyou's temporal limitation argument, that the subpoenas should have been limited to a ten-year timeframe, to be without merit. Valyou admits she is alleging both neck and back injuries stemming from the auto accident which happened in 2023. She concedes that she has been disabled from a back injury since 1987. Under these circumstances, Valyou's request that production of medical records be limited to ten years before the date of the subpoenas' issuance was rightly rejected by the trial court.

3

This brings us to Valyou's last argument, that the subpoenas lacked proper scope because they violated her constitutional right to privacy. Her objections to the notices as well as her memorandum of law filed before the trial court's hearing do not clarify which institutions were at risk of producing supposedly irrelevant medical records. At the hearing, Valyou generally claimed that the scope of all the subpoenas should be limited to records relating to her "neck and back," but only specifically directed the court's attention to *dental* records, arguing, "My client is not making a claim for anything related to dental." Navedo responded that "people will have discussions with doctors about all of their aches and pains," giving the example that "dentists can also indicate . . . whether you're having neck pain." Valyou made no effort to refute Navedo's position.

Below and here, Valyou relies almost exclusively on this Court's recent decision in *Dominguez*. But *Dominguez* is entirely distinguishable. There, the plaintiff pursued a medical malpractice claim related to damaged nerves resulting from removal of a fatty tumor in her armpit. 381 So. 3d at 1272. *Dominguez* first acknowledged that by suing the defendants, the plaintiff had waived her constitutional right to privacy in medical records that were relevant to her claims, but added that she still retained her right to privacy in those medical records that were *irrelevant* to her claims. *Id.* (citing *Weaver v. Myers*, 229 So. 3d 1118, 1132 (Fla. 2017)). The defendants had attempted to serve numerous non-party subpoenas,

4

which the *Dominguez* court agreed were "highly probable" to result in the production of irrelevant medical records because they "cast[] too wide a net." *Id.* at 1273–4 (quoting *Tanner v. Hart*, 313 So. 3d 805, 808 (Fla. 2d DCA 2021). *Dominguez* thus concluded that protection of the plaintiff's right to privacy in her medical records required the lower court to either conduct an in-camera review of the records or appropriately narrow the subpoenas.

In this case, however, we are not faced with the same or even similar facts to those in *Dominguez*. As noted, *Dominguez* involved a medical malpractice claim relative to nerve damage in the plaintiff's armpit, which was a localized injury or condition, and not generalized neck and back injuries resultant from an automobile accident. Valyou apparently reads *Dominguez* as standing for the proposition that whenever a subpoena uses the phrase "any and all records" it *per se* "cast[s] too wide a net, resulting in the highly probable inclusion of irrelevant medical records, which violates an individual's right to privacy as protected under the Florida Constitution." To be clear, though, that is *not* the holding of *Dominguez*, and it ignores a party's burden to show that the subpoenas were "highly probable" to result in the production of irrelevant records. By contrast, Valyou relied on a boilerplate complaint asserting generalized "bodily injury," then sought without support to narrow her claims to generalized damages to her "neck and back." This does not allow her to rely upon the constitutional protections *Dominguez* addressed.

5

As a final matter, we address Valyou's request in her petition for reversal of the trial court's denial of an in-camera inspection of the records produced. Throughout the hearing on her objections and prior to the trial court's ruling, Valyou never requested or expressed a need for in-camera review of the records produced. *After* the court denied the objections in their entirety, Valyou stated, "if this is the [c]ourt's inclination, I request an in-camera review of all those records." The trial court properly denied Valyou's belated and non-specific demand following her complete failure to establish that it was highly probable the subpoenas' issuance would result in the production of irrelevant records. For these reasons, we deny the petition on its merits.

PETITION DENIED.

TRAVER, C.J., and LAMBERT, B.D., Associate Judge, concur.
SMITH, J., concurs and concurs specially, with opinion.

_____

NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING
AND DISPOSITION THEREOF IF TIMELY FILED

_____

SMITH, J., concurs and concurs specially, with opinion.

I concur with this court's decision and draw four points of what appears from this case (and likely others) to be some needed guidance relative to requests for in-camera record reviews. As this court has previously recognized, "in-camera

6

inspections put [a burden] on busy trial judges." *Dominguez*, 381 So. 3d at 1274; *see also Hamlin v. Shaughnessy Overland Express, Inc.*, 50 Fla. L. Weekly D467, D468 (Fla. 6th DCA Feb. 21, 2025) (Smith, J., concurring) (discussing relief provided by civil dismissal dockets to our "heavily burdened trial courts"). In the interests of judicial economy, avoiding unnecessary in-camera reviews assists our trial courts in conserving resources and this in turn allows for more expeditious case resolutions—a win-win for everyone.

First, do your best to work it out *without* court intervention. The trial court here took issue with the quality of the parties' meet-and-confer efforts prior to setting the discovery objections for hearing. While we do not have a sufficient record to discuss counsels' actions in this regard, it is crucial to note the importance of parties discussing these issues and working toward a solution without the need for court intervention. Unless there is a legitimate need for privacy, it seems incongruous to request trial courts to invest significant amounts of time to avoid producing medical records that may contain prior complaints or treatments from broken toes to sinus infections.[1] Thus, the admonition to counsel is to work it out and not to waste the court's time just because you can. A "do unto others as you would have them to do unto you" approach is warranted.

---

[1] As noted in this court's opinion, Valyou requested in-camera review of her *chiropractic* records in a case involving *neck and back* injuries. *Chiropractic* records.

Second, use confidentiality agreements or orders where appropriate. It is not clear from the record whether either party suggested or considered a confidentiality agreement or confidentiality order below. Even in circumstances where a legitimate concern of privacy is implicated, a confidentiality agreement or confidentiality order could be an excellent solution; for instance, it could restrict viewing of the records to the law firms involved or retained experts (however the parties agree), thus balancing protecting the parties' privacy with the need for broad discovery to effectively litigate the case. *See Bd. of Trs. of Internal Improvement Tr. Fund v. Am. Educ. Enters., LLC*, 99 So. 3d 450, 458 (Fla. 2012) ("The concept of relevancy has a much wider application in the discovery context than in the context of admissible evidence at trial.") (citing *Amente v. Newman*, 653 So.2d 1030, 1032 (Fla.1995)).

Third, consider the option of allowing the non-issuing party to receive the records first. Parties could agree to the non-issuing party receiving the records, then producing the same upon a request for production pursuant to Florida Rule of Civil Procedure 1.350. The non-issuing party would identify any records it feels are objectionable, discuss resolution of those objections with opposing counsel, and, if necessary, have a much more narrowed hearing relative only to the objected records. To be clear, due to the reliance upon veracity of opposing counsel, this option can only be exercised by consent of the parties and not by unilateral order of the court. *See Rojas v. Ryder Truck Rental, Inc.*, 641 So. 2d 855, 857 (Fla. 1994) ("[T]o require

8

Ryder to file for the records pursuant to rule 1.350 would place Ryder in the position of depending on the veracity of its adversary in furnishing the records.").

Fourth, be extremely wary of asking a trial court to narrow the subpoena; rather, parties should agree to such narrowed language to avoid any future allegations of error. While on several occasions Valyou did ask that the scope of the subpoenas be limited to "neck and back," Valyou at no time proposed any language that would accomplish such a limit. It is questionable whether such limiting language could ever be crafted. By their nature, both the neck and back house the spinal cord, which indisputably connects to and impacts almost every portion of the body. Limiting medical records to "neck" or "back" in this context is not a reasonable or logical limit. Furthermore, it is also unclear how such limiting language would be received by medical providers or pharmacies. To illustrate, would a record depicting a standard body diagram with areas circled representing complaints of pain or limitation be produced if neither the neck nor back were circled? Certainly, such a record could be quite relevant to the subject claims, especially if reflective of Valyou's post-accident condition, even if technically silent as to either "neck" or "back." The same could be said of the narrative portions of records where providers discuss the general condition of a patient; if a narrative states "patient complains of leg pain" but makes no mention of "neck" or back," would that record be responsive to the subpoena? If that leg pain originated from nerve impingement caused by a

9

herniated disc, of course it would. But would a third party responding to a subpoena limited to the neck or back know that? These are but a few examples of the impracticality in attempting to narrow the scope of subpoenas on more generalized injury claims as urged by Valyou. In addition to the difficulties of formulating responses, there would be a heightened risk of human error involved in records custodians interpreting and applying such limiting language as well as the potential prejudice to the parties that could result if responsive records are not produced.

Thus, although *Dominguez* speaks to the narrowing of subpoenas as an alternative method to protect the privacy of a party, parties would be wise to agree to such narrowed language rather than place that responsibility on the trial court. Having the trial court try its hand at narrowed subpoena language is a "solution" undoubtedly rife with potential error claims down the road, all of which could be avoided by an agreement of the parties.

_____

David L. Luck and Ladisleydi Almaguer, of Morgan & Morgan, P.A., Miami, for Petitioner.

Melissa McCartney and Carri Leininger, of Williams, Leininger & Cosby, P.A., North Palm Beach, for Respondent.