# Supreme Court of Florida

_____

No. SC15-1260
_____

**HARDEE COUNTY, FLORIDA,**
Petitioner,

vs.

**FINR II, INC.,**
Respondent.

[May 25, 2017]

QUINCE, J.

This case is before the Court for review of the decision of the Second

District Court of Appeal in FINR II, Inc. v. Hardee County, 164 So. 3d 1260 (Fla.

2d DCA 2015). The district court certified that its decision is in direct conflict

with the decision of the First District Court of Appeal in City of Jacksonville v.

Smith, 159 So. 3d 888 (Fla. 1st DCA 2015). We have jurisdiction. See art. V,

§ 3(b)(4), Fla. Const. We approve the First District's holding in Smith that the

Bert J. Harris, Jr., Private Property Protection Act ("Bert Harris Act" or "Act")

does not apply to claims arising from government action that regulates property

adjacent to the claimant's property. We disapprove the Second District's contrary decision in FINR II.

## BACKGROUND

Respondent, FINR, operates a neurological rehabilitation center on a large parcel adjacent to property owned by a phosphate mining company. In pursuit of mixed-use residential and commercial development, Petitioner, Hardee County, encouraged FINR to apply for a "Rural Center" land use designation for its parcel which included a quarter-mile mining setback on adjacent property. In 2007, FINR applied for, and Hardee County approved, the land use designation change and modified the Hardee County Comprehensive Plan to grant the setback on the phosphate mining company's adjacent property.

In 2012, Hardee County granted the phosphate mining company a special exception to the land use designation that would decrease the quarter-mile setback to as little as 150 feet. FINR brought a claim under the Bert Harris Act, section 70.001, Florida Statutes (2012), against Hardee County seeking $38 million in damages for devaluation of its property for use as a neurological rehabilitation center. The trial court dismissed the claim with prejudice, finding that the Act did not apply to FINR because the quarter-mile setback change did not directly restrict or limit FINR's property. The Second District reversed and certified conflict with Smith, in which the First District found that a property owner may not state a claim

- 2 -

under the Bert Harris Act for devaluation of the claimant's property based on governmental action on the adjacent parcel.

## ANALYSIS

This Court reviews statutory interpretation de novo. See Polite v. State, 973 So. 2d 1107, 1111 (Fla. 2007). The goal of statutory interpretation is to identify the Legislature's intent. Crews v. State, 183 So. 3d 329, 332 (Fla. 2015). To do so, this Court first consults the plain meaning of the statute's text. W. Fla. Reg'l Med. Ctr., Inc. v. See, 79 So. 3d 1, 9 (Fla. 2012). "When the statute is clear and unambiguous," this Court uses the plain language and avoids rules of statutory construction. Daniels v. Fla. Dept. of Health, 898 So. 2d 61, 64 (Fla. 2005). This Court endeavors to give effect to every word of a statute so that no word is construed as "mere surplusage." Heart of Adoptions, Inc. v. J.A., 963 So. 2d 189, 198 (Fla. 2007).

### I. Plain Meaning

The Act was intended "as a separate and distinct cause of action from the law of takings . . . for relief, or payment of compensation, when a new law, rule, regulation, or ordinance of the state or a political entity in the state, as applied, unfairly affects real property." § 70.001(1), Fla. Stat. (2012). An existing use includes "actual, present use or activity" on the land and "reasonably foreseeable, nonspeculative land uses" which increase the fair market value of the property.

§ 70.001(3)(b)1.-2., Fla. Stat.  A vested right is determined under the principles of equitable estoppel or substantive due process.  § 70.001(3)(a), Fla. Stat.

The Act provides that the government action must "directly restrict[] or limit[] the use of real property" for the property to be considered "inordinately burdened."  § 70.001(3)(e)1., Fla. Stat.  To ensure that the word "directly" is not construed as mere surplusage, the government action must directly act upon the owner's parcel.  To hold otherwise would give the language no more meaning than if the word "directly" had been omitted.  The plain language of the Act provides that claims under the Act may not be based on government action on another parcel.  Because reasonable minds may disagree with this interpretation, we turn to other tools of statutory construction.

## II.  Canons of Construction, Attorney General Opinion, and Legislative History

Statutes that alter the common law are narrowly construed.  See Allstate Ins. Co. v. Rudnick, 761 So. 2d 289, 293 (Fla. 2000).  Waivers of sovereign immunity must be construed narrowly in favor of the government.  See Rabideau v. State, 409 So. 2d 1045, 1046 (Fla. 1982); Manatee Cty. v. Town of Longboat Key, 365 So. 2d 143, 147 (Fla. 1978).  Narrow interpretation of waivers of sovereign immunity protect "the public against profligate encroachments on the public treasury."  Spangler v. Fla. St. Tpk. Auth., 106 So. 2d 421, 424 (Fla. 1958).  Where a statute is open to multiple interpretations, Florida courts endeavor to avoid

interpretations which would lead to absurd results. <u>Tampa-Hillsborough Cty. Expressway Auth. v. K.E. Morris Alignment Serv., Inc.</u>, 444 So. 2d 926, 929 (Fla. 1983). Because the Act alters the common law and waives sovereign immunity, it must be narrowly construed.

Legislative history can be helpful in construing a statute when its plain language is unclear. <u>BellSouth Telecomms., Inc. v. Meeks</u>, 863 So. 2d 287, 289 (Fla. 2003). Additionally, this Court has held that "[a]lthough an opinion of the Attorney General is not binding on a court, it is entitled to careful consideration and generally should be regarded as highly persuasive." <u>McKenzie Check Advance of Fla., LLC v. Betts</u>, 928 So. 2d 1204, 1214 (Fla. 2006) (quoting <u>State v. Family Bank of Hallandale</u>, 623 So. 2d 474, 478 (Fla. 1993)). Amendments to statutes enacted shortly after controversies regarding the interpretation of the original act arise may be considered guidance for the original interpretation. <u>Lowry v. Parole & Prob. Comm'n</u>, 473 So. 2d 1248, 1250 (Fla. 1985). Long periods between original enactment and amendment render use of the amendment to demonstrate original legislative intent inappropriate. <u>Betts</u>, 928 So. 2d at 1210. With these principles in mind, we consider the parameters of the Bert Harris Act.

The Act is an alteration of common law principles of eminent domain and inverse condemnation. Therefore, the Act must be construed narrowly, no more broadly than clearly specified. <u>See</u> <u>Rudnick</u>, 761 So. 2d at 293. Because the Act

does not clearly extend to owners whose property has not been directly regulated by government action, we decline to so broadly construe it.

In addition to being a derogation of common law, the Act is also a waiver of sovereign immunity. This Court construes waivers of sovereign immunity narrowly to protect public funds. See Rabideau, 409 So. 2d at 1046; Town of Longboat Key, 365 So. 2d at 147; Spangler, 106 So. 2d at 424. This canon of construction also encourages a narrow reading of the Act. If we interpret the Act more broadly, local governments would be subject to claims under the Act each time they made changes to their own property or performed duties within their well-established police powers which may affect private property. A broad interpretation leads to an absurd result, which we endeavor to avoid. See K.E. Morris Alignment Serv., Inc., 444 So. 2d at 929.

In interpreting a statute, legislative history is also instructive. Meeks, 863 So. 2d at 289. The legislative history of the Act indicates that the Legislature intended to create new procedures to give inordinately burdened property owners a day in court before exhausting all administrative remedies and to give them the ability to arbitrate a dispute with a governmental entity without first having to obtain its consent. Fla. H.R. Comm. on Judiciary, CS for HB 863 (1995), Bill Analysis & Economic Impact Statement 2-3 (final May 23, 1995) (on file with Fla. State Archives). In a scholarly article, three original drafters of the Act provided a

detailed history of its origin. David L. Powell et. al., <u>A Measured Step to Protect Private Property Rights</u>, 23 Fla. St. U. L. Rev. 255, 259-61 (1995). According to the drafters, the Legislature was focused on "the appropriate means to give landowners protection . . . against some regulatory actions which do not rise to the level of a taking." <u>Id.</u> at 258. In the drafters' words, "[a] governmental action which indirectly burdened or inadvertently devalued an owner's land, because of regulatory decisions regarding another owner's property, would be too attenuated for relief under the Harris Act." <u>Id.</u> at 273. Thus, legislative history supports the interpretation that the Act was intended to apply to property that was itself the subject of the governmental action, not to tangential property.

Attorney General opinions are also persuasive in statutory construction. <u>Betts</u>, 928 So. 2d at 1214. While not binding on this Court, the Florida Attorney General favored a narrow construction of the Act in an opinion issued the year the Act became effective. The Attorney General found that the Act does not apply to property that has "suffered a diminution in value or other loss as a result of its proximity to the property that is subject to" a government action. Op. Att'y Gen. Fla. 95-78 (1995). We agree.

While long periods between a statute's enactment and its amendment render the use of the amendment to demonstrate original legislative intent inappropriate, amendments enacted shortly after controversies as to the interpretation of the

- 7 -

original act arise may be considered useful guidance for the original intent. <u>Lowry</u>, 473 So. 2d at 1250; <u>Betts</u>, 928 So. 2d at 1210. The 2015 Amendment to section 70.001(3)(f) made clear that the Act does not apply to property owners whose parcel is not "the subject of and directly impacted by the action of a governmental entity." Ch. 2015-142, § 1, Laws of Fla. (2015). The Final Bill Analysis of the 2015 Amendment cites the conflict case, <u>Smith</u>, 159 So. 3d at 888, as the impetus for the Amendment. <u>See</u> Fla. H.R. Comm. on Judiciary, CS for CS for CS for HB 383 (2015), Final Bill Analysis 5 n.25 (final June 17, 2015) (available at https://www.flsenate.gov/Session/Bill/2015/0383/Analyses/h0383z2.CJS.PDF). Although the 2015 Amendment was passed nearly two decades after the original enactment, the 2015 Amendment was passed in response to the novel controversy arising from this case. We find the 2015 Amendment persuasive.

These tools of statutory interpretation favor a narrow interpretation of the Act. Owners whose property has not been directly acted upon by a governmental entity may not state a claim under the Act. With this interpretation, we return to its application to this case.

### III. Application to FINR

The government action in this case directly applied to the mining setback. For FINR to state a claim, FINR must have a property interest in the setback. Setbacks can be enforced through restrictive covenants or deed restrictions or

imposed by the government through its police power. In holding that setbacks may be accomplished by police power, this Court noted the following:

> [S]etback lines . . . <u>do not really create an easement</u> in the strict legal sense. No one acquires any right of passage or other use to the exclusion of the owner over that part of the lot upon which buildings or structures are forbidden. The effect of setback lines and open yards and spaces in zoning ordinances is merely to regulate the use of property. It gives no beneficial use to another, except as light and air may rest undisturbed in the space where structures are prohibited. This restriction of use is based upon the exercise of the police power for the general welfare, and is not based on contract rights or the exercise of the power of eminent domain.

<u>City of Miami v. Romer</u>, 58 So. 2d 849, 851 (Fla. 1952) (emphasis added) (quoting <u>State v. Houghton</u>, 213 N.W. 907, 908 (Minn. 1927)). The setback in this case was created by police power—land use designation—for the general welfare. The setback in this case is not a property right for which FINR may state a claim under the Act.

### CONCLUSION

Based on the foregoing, we approve the First District's decision in <u>Smith</u>, disapprove the Second District below, and remand for further proceedings consistent with this opinion.

It is so ordered.

LABARGA, C.J., and PARIENTE, and LEWIS, JJ., concur.
LAWSON, J., concurs specially with an opinion, in which CANADY, J., concurs.
POLSTON, J., concurs in result only.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION, AND IF FILED, DETERMINED.

LAWSON, J., specially concurring.

I agree with the result reached by the majority and most of the majority opinion, but concur specially because much of the majority's analysis is unwarranted. The text of the statute fully resolves this case, leaving "no occasion for resorting to the rules of statutory interpretation and construction," Holly v. Auld, 450 So. 2d 217, 219 (Fla. 1984) (citations omitted), and rendering section II of the majority opinion improper, id. As the plain language of the statute ends our inquiry, I would end our analysis with the conclusion in section I that: "The plain language of the Act provides that claims under the Act may not be based on government action on another parcel." Majority op. at 4.

CANADY, J., concurs.

Application for Review of the Decision of the District Court of Appeal – Certified Direct Conflict of Decisions

Second District - Case No. 2D14-788

(Hardee County)

Frank E. Matthews, D. Kent Safriet, Timothy M. Riley, and Mohammad O. Jazil of Hopping Green & Sams, P.A., Tallahassee, Florida; and Kenneth B. Evers of Kenneth B. Evers, P.A., Wauchula, Florida,

for Petitioner

Edward P. de la Parte, Jr., Patrick J. McNamara, David M. Caldevilla, and Vivian Arenas-Battles of de la Parte & Gilbert, P.A., Tampa, Florida,

- 10 -

for Respondent