# Third District Court of Appeal

## State of Florida

Opinion filed June 13, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D17-1448
Lower Tribunal No. 14-27809
_____

## Eduardo F. Eduartez,
Appellant,

vs.

## Federal National Mortgage Association, et al.,
Appellees.

An Appeal from a non-final order from the Circuit Court for Miami-Dade County, Rodney Smith, Judge.

Kenzie N. Sadlak, P.A., and Kenzie N. Sadlak, for appellant.

Straley & Otto, P.A., and Shelley J. Murray and Brian T. Meanley (Fort Lauderdale), for appellee Sunshores Condominium Association, Inc; The Griffith Law Firm, P.A., and Derek R. Griffith, for appellee Degel, LLC.

Before LOGUE, SCALES and LINDSEY, JJ.

PER CURIAM.

Appellant Eduardo Eduartez, defendant/mortgagor below, appeals a trial court order denying Eduartez's rule 1.540 motion to vacate an earlier trial court

order disbursing surplus funds – realized after a foreclosure sale of Eduartez's condominium – to appellee Sunshores Condominium Association, Inc. ("Association"). Although the trial court, as a matter of statutory construction, incorrectly determined that the sixty-day window for subordinate lienholders to file claims for surplus proceeds commenced upon the clerk's issuance of a Certificate of Title, rather than upon the foreclosure sale, we nevertheless affirm the trial court's order denying Eduartez's motion because the September 6, 2016 disbursement order was merely erroneous rather than void.

## I.    Relevant Facts and Procedural Background

### A. *The Final Judgment of Foreclosure*

In March 2011, Eduartez executed and delivered to JPMorgan Chase Bank a promissory note secured by a mortgage on a residential condominium unit Eduartez owned in North Miami Beach. In 2014, Eduartez defaulted on his obligations, which led JP Morgan to file its mortgage foreclosure complaint in October 2014. The complaint named Association as a subordinate lienholder by virtue of Association's July 2014 lien for approximately $7,000 in unpaid assessments. Association answered JP Morgan's foreclosure complaint and in its affirmative defenses alleged that, should the property be sold at a foreclosure sale, Association would be entitled to all surplus proceeds. In March 2015, Federal National Mortgage Association was substituted for JP Morgan as the plaintiff in

2

the foreclosure case, and it obtained a final foreclosure judgment on March 17, 2016.

In relevant part, Paragraph 8 of the final judgment reads:

**Jurisdiction**. The Court retains jurisdiction of this action to enter further orders that are proper, including, without limitation, writs of possession and deficiency judgments.

**IF THIS PROPERTY IS SOLD AT PUBLIC AUCTION, THERE MAY BE ADDITIONAL MONEY FROM THE SALE AFTER PAYMENT OF PERSONS WHO ARE ENTITLED TO BE PAID FROM THE SALE PROCEEDS PURSUANT TO THE FINAL JUDGMENT.**

**IF YOU ARE A SUBORDINATE LIEN HOLDER CLAIMING A RIGHT TO FUNDS REMAINING AFTER THE SALE, YOU MUST FILE A CLAIM WITH THE CLERK NO LATER THAN SIXTY (60) DAYS <u>AFTER THE SALE</u>. IF YOU FAIL TO FILE A CLAIM, YOU WILL NOT BE ENTITLED TO ANY REMAINING FUNDS.**

(Bold and all capital letters in original; underlining emphasis added).

In the final judgment, the trial court set April 21, 2016, as the date of the foreclosure sale.

B. *The Foreclosure Sale*

Due to a pending rehearing motion (ultimately denied by the trial court), the trial court cancelled the April 21, 2016 initial foreclosure sale and, on May 20, 2016, the clerk rescheduled the foreclosure sale for June 21, 2016. Consistent with

3

the above-cited language appearing in paragraph 8 of the final judgment, the clerk's notice of the rescheduled foreclosure sale contained the following notation:

> ANY PERSON CLAIMING AN INTEREST IN THE SURPLUS FROM THE SALE, IF ANY, OTHER THAN THE PROPERTY OWNER AS OF THE DATE OF LIS PENDENS MUST FILE A CLAIM WITHIN 60 DAYS AFTER THE SALE.

(All capital letters in original; underlining emphasis added).

The foreclosure sale occurred on June 21, 2016. In conformity with section 45.031(4) of the Florida Statutes, the clerk, on June 24, 2016, issued a Certificate of Sale informing that the property was sold to third-party purchaser Degel, LLC ("Degel") for $116,100 at the June 21, 2016 foreclosure sale.

### C. *The Certificates of Title and Disbursements*

Having received no objections to the sale within ten days after the filing of the Certificate of Sale, the clerk, pursuant to section 45.031(5), issued the Certificate of Title on July 8, 2016. Also on July 8, 2016, in conformity with section 45.031(7), the clerk issued the Certificate of Disbursements, identifying a surplus realized by the foreclosure sale in the amount of $41,578.63. As required by section 45.031(7)(b), the Certificate of Disbursements contained the following instructions to Association:

> IF YOU ARE A PERSON CLAIMING A RIGHT TO FUNDS REMAINING AFTER THE SALE, YOU MUST FILE A CLAIM WITH THE CLERK NO LATER THAN 60 DAYS AFTER THE

4

SALE. IF YOU FAIL TO FILE A CLAIM, YOU WILL NOT BE ENTITLED TO ANY REMAINING FUNDS. AFTER 60 DAYS, ONLY THE OWNER OF RECORDS [sic][1] AS OF DATE OF THE LIS PENDENS MAY CLAIM THE SURPLUS.

(All capital letters; underlining emphasis added).

On July 26, 2016, the clerk issued a Corrected Certificate of Disbursements correcting the amount of disbursements to the mortgagee, resulting in an adjusted surplus amount of $41,569.05. This Corrected Certificate of Disbursements contained the same instructions to Association – in all capital letters – as in the initial Certificate of Disbursements.

### D. *Disbursement Motions and the Disbursement Order*

Notwithstanding the language contained in (i) the final judgment, (ii) the clerk's notice of sale, and (iii) the Certificate of Disbursements, Association did not file a claim for the surplus funds within sixty days of the June 21, 2016 foreclosure sale (i.e., on or before August 20, 2016). Rather, on August 25, 2016, sixty-five days after the foreclosure sale, the third-party purchaser, Degel, filed a motion requesting the court to disburse $31,087.58 to Association.[2] It was not until

---

[1] Section 45.032(1)(a) defines the term "owner of record" as the person appearing to own the property being foreclosed upon on the date of the filing of the lis pendens. In this case, Eduartez was the "owner of record," and when we use this term with respect to this case's specific facts, we are referring to Eduartez.

[2] As discussed in footnote 13, *infra*, neither the relevant statutes nor the standard form foreclosure judgment adopted by the Florida Supreme Court contemplate surplus proceeds claims filed by parties other than subordinate lienholders and the

5

September 1, 2016 – seventy-two days after the foreclosure sale – that Association filed its own motion seeking a portion of the surplus. In this September 1, 2016 motion, Association asserted it was owed $31,982.30, inclusive of Association maintenance fees, interest, late fees and attorney's fees.

The record reflects that, on September 6, 2016, the trial court held, on its uniform motion calendar, a non-evidentiary hearing on the two disbursement motions, and that Eduartez's counsel appeared telephonically at this hearing. There is no transcript of this hearing. After the hearing, the trial court entered its September 6, 2016 order directing the clerk to disburse $32,601.05 of the surplus funds to Association's counsel ("the September 6, 2016 disbursement order"). Eduartez filed no rehearing motion directed toward the September 6, 2016 disbursement order, nor did Eduartez appeal this order.[3]

### E. Surplus Trustee Petition and Resulting "Agreed" Order

Several months later, on February 23, 2017, in an effort to disburse the remaining $8,938.00 in surplus proceeds being held by the clerk,[4] the clerk,

owner of record. Indeed, Degel's disbursement motion did not seek to have any surplus proceeds disbursed to *it*. Rather, Degel's August 25, 2016 motion sought to have the surplus proceeds disbursed to Association, presumably in response to an August 22, 2016 demand from Association's counsel claiming Degel owed Association $31,087.58 for Eduartez's unpaid fees.

[3] While not relevant to our holding, it bears noting that Eduartez's counsel filed an affidavit asserting he never received a copy of the September 6, 2016 disbursement order.

pursuant to section 45.032(3)(c), appointed a surplus trustee to locate the property's owner of record. On March 3, 2017, the surplus trustee filed its petition in the circuit court, indicating that it had located the owner of record (Eduartez) and recommending that the $8,938.00 in surplus proceeds held by the clerk (minus its statutory fees pursuant to section 45.034(7)) be distributed to Eduartez via his legal counsel.

Presumably to avoid his having to pay the approximately $536 in statutory fees due to the surplus trustee, Eduartez, through counsel, objected to the appointment of the surplus trustee and the surplus trustee's petition. Nothing, however, in Eduartez's objection challenged the September 6, 2016 disbursement order. Ultimately, the trial court entered a May 15, 2017 "agreed" order authorizing the disbursement of the $8,938.00 remaining surplus proceeds, minus the surplus trustee's fee and allowable clerk's fee, to Eduartez.

### F. *Eduartez's Rule 1.540(b)(4) Motion and the Order on Appeal*

Three days after the entry of this May 15, 2017 "agreed" disbursement order, Eduartez filed a Florida Rule of Civil Procedure 1.540(b)(4) motion challenging, for the first time, the September 6, 2016 disbursement order. In his

---

[4] This $8,938.00 sum should represent the difference between the amount identified in the Corrected Certificate of Disbursements, $41,569.05, and $32,601.05, the amount the trial court ordered disbursed to Association's counsel in the September 6, 2016 disbursement order. There appears to be a thirty dollar math error.

7

rule 1.540 motion, Eduartez asserted that the trial court was without subject matter jurisdiction to entertain either Degel's August 25, 2016 disbursement motion or Association's September 1, 2016 disbursement motion, because neither motion was filed within sixty days of the June 21, 2016 foreclosure sale. Eduartez argued (as he does on appeal) that the September 6, 2016 disbursement order is therefore void.

On May 30, 2017, the trial court conducted a hearing on Eduartez's rule 1.540 motion. At the hearing, the parties presented the trial court with two competing district court of appeal opinions regarding when the sixty-day period commences for a junior lienholder to file a claim for surplus proceeds: (i) Straub v. Wells Fargo Bank, N.A., 182 So. 3d 878, 881 (Fla. 4th DCA 2016) (holding that the sixty-day period commences when the clerk issues and files the Certificate of Title), and (ii) Bank of N.Y. Mellon v. Glenville, 215 So. 3d 1284, 1286 (Fla. 2nd DCA 2017) (holding that the sixty-day period commences on the date of the foreclosure sale). After the May 30, 2017 hearing, the trial court, relying upon and citing the Straub decision, concluded that the Association's disbursement motion was timely and entered the order on appeal denying Eduartez's rule 1.540 motion.[5] Eduartez timely appealed this order.

---

[5] Because the trial court determined that Association's disbursement motion was timely filed, the trial court obviously did not reach the jurisdictional/voidness issue raised in Eduartez's Rule 1.540(b)(4) motion.

8

**II. Standard of Review**

A trial court's denial of a rule 1.540 motion is generally reviewed for an abuse of discretion. <u>Foche Mortg., LLC v. CitiMortgage, Inc.</u>, 163 So. 3d 525, 526 (Fla. 3d DCA 2015). When, however, our review turns either on a purely legal, statutory construction or voidness issue, we review the rule 1.540 order *de novo*. <u>Metcalfe v. Lee</u>, 952 So. 2d 624, 627-28 (Fla. 4th DCA 2007) (statutory construction); <u>see also</u> <u>State Farm Mut. Auto. Ins. Co. v. Statsick</u>, 231 So. 3d 528, 531 (Fla. 2d DCA 2017) (voidness).

**III. Analysis**

*A. Introduction*

Eduartez argues that Association's September 1, 2016 disbursement motion was filed outside the statutorily prescribed, sixty-day time period that commenced with the June 21, 2016 foreclosure sale. Association argues that the sixty-day period commenced not upon the foreclosure sale date, but rather, upon the clerk's July 8, 2016 issuance and filing of the Certificate of Title; and because Association's motion was filed fifty-five days after the clerk issued and filed the Certificate of Title, its motion was timely filed.

This issue has recently been decided by two of our sister courts in conflicting opinions. The Fourth District concluded that the sixty-day period starts when the clerk issues and files the Certificate of Title. <u>Straub</u>, 182 So. 3d at 881.

Subsequently, the Second District concluded that this sixty-day period starts on the date of the foreclosure sale. Glenville, 215 So. 3d at 1286.[6] The trial court adopted the Fourth District's reasoning in Straub. For the reasons outlined below, we agree with the decision reached by the Second District in Glenville.

### B. *Text of Relevant Statutory Provisions*

The Florida Statutes prescribe a very specific procedure for foreclosure sales and the disbursement of proceeds generated from foreclosure sales. The relevant procedures are codified in section 45.031, and incorporated into the Florida Supreme Court-promulgated final foreclosure judgment form, Form 1.996.[7] As

---

[6] On September 5, 2017, the Florida Supreme Court accepted conflict jurisdiction of Straub and Glenville in case number SC17-954. Neither of the parties in this case has asked us to abate our adjudication pending the Florida Supreme Court's decision. Because the panel is affirming based on the voidness/jurisdictional issue (see section III. D., *infra*), we ordinarily would not reach the statutory construction issue. See PDK Labs., Inc. v. U.S. Drug Enf't Admin., 362 F. 3d 786, 799 (D.C. Cir. 2004) ("[T]he cardinal principle of judicial restraint [is] if it is not necessary to decide more, it is necessary not to decide more[.]") (Roberts, J., concurring in part and concurring in judgment). We decide the issue, though, to provide precedent in the District. Although it has preliminarily accepted jurisdiction to resolve the apparent conflict between Straub and Glenville, it is not a sure bet that the Florida Supreme Court will decide the timeliness issue. On occasion, even after merits briefing and oral argument, our Supreme Court has dismissed a case, concluding that its initial jurisdiction determination was improvident. See e.g. Yee v. State, 214 So. 3d 540 (Fla. 2017).

[7] In 2006, the Florida Legislature amended section 45.031(1) to, among other things, require every foreclosure judgment to contain specific language regarding the process by which a subordinate lienholder could claim an entitlement to any surplus proceeds realized at a foreclosure sale. This language included the sixty-day time period at issue in this case. Ch. 06-175, § 1 at 1, Laws of Fla. In 2010, the Florida Supreme Court amended its standard Final Judgment of Foreclosure

10

with any case involving statutory construction, our goal is to identify the Legislature's intent, and our inquiry begins by consulting the plain meaning of the relevant statute's text. Hardee Cty. v. FINR II, Inc., 221 So. 3d 1162, 1165 (Fla. 2017).

Section 45.031(1)(a) requires that, in each final foreclosure judgment, the trial court "shall direct the clerk to sell the property at public sale on a specified day that shall be not less than 20 days or more than 35 days after the date" the judgment is entered. § 45.031(1)(a), Fla. Stat. (2016) (emphasis added).[8] As mentioned previously, section 45.031(1)(a) also requires the final foreclosure judgment to contain, in conspicuous type, specific instructions to subordinate

---

Form (Form 1.996) to, among other things, incorporate the sixty-day time period into that portion of the form foreclosure judgment governing the trial court's retained jurisdiction over the matter. In Re Amendments to the Florida Rules of Civil Procedure, 44 So. 3d 555, 558, 563 (Fla. 2010). In this 2010 opinion, our Supreme Court also adopted a new Form 1.996(b), creating a standard motion to cancel and reschedule a foreclosure sale. Id. at 564. Hence, the Final Judgment of Foreclosure Form was renumbered as Form 1.996(a). Id. at 561. In 2014, our Supreme Court adopted a new foreclosure judgment form for use when the judgment also reestablishes a lost note; this new form was numbered as Form 1.996(b) and the previously adopted motion to cancel and reschedule foreclosure sale was renumbered as Form 1.996(c). In Re Amendments to Florida Rules of Civil Procedure, 153 So. 3d 259 (Fla. 2014).

[8] Form 1.996(a) effectuates this statutory provision in its paragraph captioned, "Sale of Property," which includes a specific foreclosure sale date and the location of the foreclosure sale. Paragraph 4 of the March 17, 2016 final foreclosure judgment entered by the trial court in this case is virtually identical to the "Sale of Property" paragraph of Form 1.996(a).

11

lienholders claiming an entitlement to any surplus funds realized at the foreclosure sale:

> IF THIS PROPERTY IS SOLD AT PUBLIC AUCTION, THERE MAY BE ADDITIONAL MONEY FROM <u>THE SALE</u> AFTER PAYMENT OF PERSONS WHO ARE ENTITLED TO BE PAID FROM THE SALE PROCEEDS PURSUANT TO THE FINAL JUDGMENT.
>
> IF YOU ARE A SUBORDINATE LIEN HOLDER CLAIMING A RIGHT TO FUNDS REMAINING AFTER <u>THE SALE</u>, YOU MUST FILE A CLAIM WITH THE CLERK NO LATER THAN SIXTY (60) DAYS <u>AFTER THE SALE</u>. IF YOU FAIL TO FILE A CLAIM, YOU WILL NOT BE ENTITLED TO ANY REMAINING FUNDS.[9]

(All capital letters in original; underlining emphasis added).

Section 45.031(2) requires the publication of the notice of sale once a week for two consecutive weeks in a newspaper of general circulation. The published notice must contain, among other things, "[a] description of the property to be sold,"[10] [t]he time and place of <u>the sale</u>,"[11] and "[a] statement that any person claiming an interest in the surplus from the sale, if any . . . must file a claim within

---

[9] Both Form 1.996(a) and paragraph 8 of the March 17, 2016 foreclosure judgment include this statutorily required language in that portion of the final judgment relating to the trial court's continuing jurisdiction in the case. <u>See</u> section I. *A., supra*.

[10] § 45.031(2)(a), Fla. Stat. (2016).

[11] § 45.031(2)(b), Fla. Stat. (2016). (Emphasis added.)

12

60 days after <u>the sale</u>."[12]   Next, section 45.031(3) requires "<u>the sale</u> . . . be conducted at public auction at the time and place set forth in the final judgment." (Emphasis added). This section also requires that the successful high bidder post a deposit equal to five percent "[a]t the time of <u>the sale</u>." <u>Id.</u> (Emphasis added.) Section 45.031(4) requires the clerk, "[a]fter <u>a sale</u> of the property" to "promptly file a certificate of sale and serve a copy of it on each party. . . ." <u>Id.</u> (Emphasis added.)

Section 45.031(5) requires the clerk to file a Certificate of Title "[i]f no objections <u>to the sale</u> are filed within 10 days after filing the certificate of sale. . . ." (Emphasis added.) Section 45.031(6) requires the clerk to record the Certificate of Title and states that "title to the property shall pass to the purchaser named in the certificate" of title when the clerk files same.

Section 45.031(7)(a) requires the clerk, "on filing a certificate of title," to disburse the sales proceeds and file a Certificate of Disbursements outlining how the sales proceeds have been disbursed, including any surplus retained by the clerk. Finally, section 45.031(7)(b) requires the Certificate of Disbursements to contain the following notation in all capital letters, immediately following the section outlining any surplus funds:

---

[12] § 45.031(2)(f), Fla. Stat. (2016). (Emphasis added.)

IF YOU ARE A PERSON CLAIMING A RIGHT TO FUNDS REMAINING AFTER THE SALE, YOU MUST FILE A CLAIM WITH THE CLERK NO LATER THAN 60 DAYS AFTER <u>THE SALE</u>. IF YOU FAIL TO FILE A CLAIM, YOU WILL NOT BE ENTITLED TO ANY REMAINING FUNDS. AFTER 60 DAYS, ONLY THE OWNER OF RECORD AS OF THE DATE OF THE LIS PENDENS MAY CLAIM THE SURPLUS.

§ 45.031(7)(b), Fla. Stat. (2016). (Emphasis added.)

C. *Statutory Construction Discussion*

As is apparent from the relevant provisions of section 45.031, the foreclosure sale is an event separate, apart, and distinct from the clerk's issuance of a Certificate of Title. The "sale" is the public auction of the property, occurring on the date, at the place, and in the manner set forth in the foreclosure judgment, and as noticed for two consecutive weeks in the notice of sale. The clerk's issuance of the Certificate of Title is a ministerial act undertaken by the clerk at least ten days *following the sale*, assuming no objections to the sale have been filed; it is an altogether distinct event from the foreclosure sale. Critically, each and every reference in section 45.031 as to when subordinate lienholders are required to file a claim to surplus proceeds relates to the sixty-day period after the "sale." Conversely, the statute contains no such reference to the sixty-day period commencing with the clerk's issuance of the Certificate of Title. Had the Legislature intended for the sixty-day period to commence with the clerk's issuance of the Certificate of Title, it certainly could have drafted section 45.031 to

14

accomplish such intent. Rather, employing plain language, the Legislature defined the contours of the sixty-day period to commence with the sale, and we are constrained by that language. Akerman Senterfitt & Eidson, P.A. v. Value Seafood, Inc., 121 So. 3d 83, 86 (Fla. 3d DCA 2013) ("When a statute is clear and unambiguous, courts will not look behind the statute's plain language for legislative intent or resort to rules of statutory construction to ascertain intent.").

Based on our *de novo* review of the text of the relevant statutory provisions, we are unable to conclude, as did the Fourth District and the trial court, that in section 45.031, the Legislature's use of the word "sale" means anything but the foreclosure sale. We agree with the Second District that a subordinate lienholder must file a claim for surplus funds no later than sixty days following the foreclosure sale. Glenville, 215 So. 3d at 1286; Dever v. Wells Fargo Bank Nat'l Ass'n, 147 So. 3d 1045, 1047 (Fla. 2d DCA 2014); Mathews v. Branch Banking & Trust Co., 139 So. 3d 498, 500-01 (Fla. 2d DCA 2014). We therefore conclude that the trial court erred by determining that Association's disbursement motion was timely.[13]

We certify conflict with Straub.

---

[13] As referenced in footnote 2, *supra*, on August 25, 2016 – sixty-five days after the foreclosure sale – third-party purchaser Degel filed its own disbursement motion. Because Degel filed its motion more than sixty days after the foreclosure sale, Degel's motion also was untimely. We need not, and therefore do not, reach the issue of whether Degel's motion was cognizable.

*D. Voidness/Jurisdiction Discussion*

Notwithstanding our determination that the trial court erred in construing the relevant portions of chapter 45, we nevertheless affirm the trial court's denial of Eduartez's rule 1.540 motion under the "Tipsy Coachman" rule. See Dade Cty. Sch. Bd. v. Radio Station WQBA, 731 So. 2d 638, 644 (Fla. 1999) ("[I]f a trial court reaches the right result, but for the wrong reasons, it will be upheld if there is any legal basis which would support the judgment in the record.").

To come within the limited remedy provided by rule 1.540, Eduartez contends that the September 6, 2016 disbursement order was void because the court lacked jurisdiction. See generally Balmoral Condo. Ass'n v. Grimaldi, 107 So. 3d 1149, 1152 (Fla. 3d DCA 2013). Eduartez is incorrect. The trial court had continuing jurisdiction to determine who was entitled to receive the undistributed proceeds of the foreclosure sale. Among other things, the trial court had jurisdiction to determine who the owner of record was, whether a trustee needed to be appointed, whether the trustee was entitled to a percentage of the proceeds, whether the proceeds had been assigned or transferred; and then to disburse the proceeds to different parties accordingly. See, e.g., §§ 45.032, 45.033, Fla. Stat. (2016). That the trial court might have disbursed the proceeds to the wrong person would not mean the trial court lacked jurisdiction, but simply that the trial court

16

committed reversible error. Rule 1.540 is unavailable to remedy legal error. Theodorides v. Theodorides, 201 So. 3d 141, 143-44 (Fla. 3d DCA 2015).

In summary, simply because the September 6, 2016 disbursement order was contrary to law because the disbursement motions were untimely filed, such legal error rendered the resulting September 6, 2016 disbursement order erroneous, but not void. The trial court did not lack subject matter jurisdiction over the issue. Therefore, the September 6, 2016 disbursement order was not void, and we affirm the trial court's decision to deny Eduartez's rule 1.540 motion.

**IV. Conclusion**

Pursuant to the relevant statutory provisions, we conclude that claims by subordinate lienholders to surplus funds generated from foreclosure sales must be filed within sixty days of the foreclosure sale. We nevertheless affirm the trial court's denial of Eduartez's rule 1.540 motion because the trial court's error in construing the relevant statutes rendered the September 6, 2016 disbursement order erroneous, but not void.

Affirmed. Conflict certified.

LOGUE and LINDSEY, JJ., concur.

SCALES, J., concurring in part and dissenting in part.

I wholeheartedly concur with the majority's analysis of the statutory construction issue, and concur in the majority's conclusion that the Second

District's holding in <u>Glenville</u> is correct. I dissent, however, from section III. D. of the majority opinion that adjudicates, *in the first instance*, the issue of whether the September 6, 2016 disbursement order is void or merely erroneous. In my view, we should not decide this issue because the trial court never reached it, and the parties have not briefed the issue to us. Therefore, I would remand the case to the trial court to adjudicate, in the first instance, the voidness issue raised in Eduartez's rule 1.540 motion.