# Supreme Court of Florida

_____

No. SC19-87
_____

**MICHAEL BARNETT, etc., et al.,**
Petitioners,

vs.

**STATE OF FLORIDA, DEPARTMENT OF FINANCIAL SERVICES,
et al.,**
Respondents.

September 24, 2020

PER CURIAM.

This case is before the Court for review of the decision of the Fourth District Court of Appeal in *State Department of Financial Services v. Barnett*, 262 So. 3d 750 (Fla. 4th DCA 2018). In a separate opinion in the same case, *State Department of Financial Services v. Barnett*, 268 So. 3d 758 (Fla. 4th DCA 2019), the district court certified the following question as one of great public importance:

> WHEN MULTIPLE CLAIMS OF INJURY OR DEATH ARISE
> FROM THE SAME ACT OF NEGLIGENCE COMMITTED BY A
> STATE AGENCY OR ACTOR, DOES THE LIMITATION ON THE
> WAIVER OF SOVEREIGN IMMUNITY IN SECTION 768.28(5),
> FLORIDA STATUTES, CAP THE LIABILITY OF STATE
> AGENCIES AT $200,000 FOR ALL RESULTING INJURIES OR

DEATHS, AS CLAIMS AND JUDGMENTS "ARISING OUT OF THE SAME INCIDENT OR OCCURRENCE"?

*Id.* at 759.  We have jurisdiction.  *See* art. V, § 3(b)(4), Fla. Const.  We rephrase the certified question as follows:

> WHEN MULTIPLE CLAIMS OF INJURY AGAINST A STATE AGENCY OR ACTOR ARISE FROM ONE OVERALL INJURY-CAUSING EVENT, DOES THE LIMITATION ON THE WAIVER OF SOVEREIGN IMMUNITY IN SECTION 768.28(5), FLORIDA STATUTES, CAP THE LIABILITY OF STATE AGENCIES AT $200,000 FOR ALL RESULTING INJURIES OR DEATHS AS CLAIMS AND JUDGMENTS "ARISING OUT OF THE SAME INCIDENT OR OCCURRENCE"?

Given this Court's long-standing precedent that strictly construes Florida law waiving sovereign immunity, we answer the rephrased certified question in the affirmative and hold that the mass shooting committed by Patrick Dell is a single "incident or occurrence" for purposes of section 768.28(5), Florida Statutes (2010) (subsection (5)), and that the cumulative liability for all claims of injury resulting from the incident may not exceed the aggregate cap of $200,000 set forth in the statute.

## FACTS AND PROCEDURAL HISTORY

In September 2010, Patrick Dell (Dell) entered the Riviera Beach residence of his estranged wife, Natasha Whyte-Dell (Whyte-Dell), where he fatally shot her and four of her children.  Dell also severely wounded a fifth child by shooting him in the neck.  Dell committed suicide shortly after exiting the residence.

Several months prior to the shootings, on January 26, 2010, the abuse hotline of the Florida Department of Children and Families (DCF) received a phone call about an incident that occurred in December 2009. According to the police report, while Whyte-Dell was visiting a friend, Dell charged at and threatened Whyte-Dell with a knife, verbally threatened to kill her, and flattened all four tires on her vehicle. Later the same morning, Dell was arrested for aggravated assault with a deadly weapon and criminal mischief.

Over the course of the following month, DCF conducted an investigation but subsequently closed the case file on February 25, 2010, after concluding that the children were not at significant risk of harm. The investigator's report stated:

> [A]lthough there have been prior domestic disturbances between the parents, this is the first time that there has been a significant domestic violence matter between the two, and they have both agreed to a safety plan which involves calling 911 should any future incidents occur. The older children have been made aware of this as well. Despite the serious nature of the matter for which the father was arrested, investigation did not reveal any reliable evidence which would lead this [investigator] to believe that the children are in any significant risk at this time.
> . . . .
> The family requested daycare/aftercare services for the four younger children, and such referral was made.

Michael Barnett (Barnett), individually, as the natural father and guardian of the injured child, and in his capacity as the personal representative of the estates of three of the deceased children, filed an action against DCF alleging claims of wrongful death and negligence. Leroy Nelson, Jr., (Nelson) filed a separate

wrongful death action against DCF in his capacity as the personal representative of the estate of the fourth deceased child.

Barnett's and Nelson's complaints alleged that DCF breached multiple nondelegable duties and failed to protect the children from an unreasonable risk of harm. Among the actions that DCF allegedly failed to take were failing to adequately follow up on the December 2009 incident, failing to inquire into domestic disturbance calls placed from Whyte-Dell's residence between July 2009 and November 2009, and failing to inquire into a domestic violence injunction obtained by Whyte-Dell against Dell that expired in July 2009.

DCF raised various affirmative defenses, including that Florida's limited waiver of sovereign immunity, codified at section 768.28, limited the aggregate recovery available to Barnett and Nelson to $200,000.

Barnett and Nelson filed separate motions for partial summary judgment on the sovereign immunity issue and adopted each other's motions. The Florida Department of Financial Services (DFS) filed a petition for declaratory relief, seeking a determination as to whether the $200,000 aggregate cap applied to all claims arising out of the mass shooting committed at Whyte-Dell's residence. DFS also filed a motion to intervene in the Barnett action and a motion to consolidate the Barnett and Nelson cases for purposes of ruling on the petition for declaratory relief and the motions for partial summary judgment. The trial court granted the

motions to intervene in the declaratory action and to consolidate the two cases for the limited purposes sought.

Following a hearing, the trial court granted both motions for partial summary judgment, concluding that the shooting of each individual child was a separate incident or occurrence for purposes of the sovereign immunity damage caps set forth in subsection (5). The court also determined that as to the DFS petition for declaratory relief, "each wrongful death or personal injury claim is eligible for the $100,000 per person and $200,000 per claim limitation found in [subsection (5)]."

On appeal, the Fourth District reversed the decisions of the trial court. *See Barnett*, 262 So. 3d at 751. The district court concluded that the present case "involves a single claim of negligence against [DCF] in the failure to properly investigate the family and the stepfather before closing its file. Thus, each estate's claim and the claim of the injured child arise from the same incident of negligence of [DCF]. Therefore, the $200,000 cap per incident or occurrence applies to limit recovery for all claims." *Id.* at 753.

In a separate opinion in the same case, on the motion to certify a question of great public importance, the Fourth District stated:

> Unfortunately, our state has experienced a number of high-profile mass shootings in the past several years, some of which have led to negligence complaints against state agencies. In our opinion in the instant case, we narrowly construed [subsection (5)] to limit the

sovereign immunity waiver to $200,000 when there are multiple claims arising out of the same negligent act(s) committed by the state agency. However, we acknowledge that a broader reading of the statute could allow a per injury limitation.

*Barnett*, 268 So. 3d at 759 (footnote omitted). The district court then certified the question set forth above as one of great public importance.

## ANALYSIS

### I.   Sovereign Immunity

The common law doctrine of sovereign immunity, pursuant to which a government is immune from suit unless it consents to being sued, dates back to thirteenth-century England, *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 102-03 (1996), and became Florida law when "[t]he common law of England in effect on July 4, 1776, was adopted [by the Legislative Council of the Territory of Florida] as the law of Florida and declared to be of full force and effect [in 1829]." *State v. Egan*, 287 So. 2d 1, 3 (Fla. 1973) (quoting *Coleman v. State*, 159 So. 504, 507 (Fla. 1935)). Florida's constitution expressly vests the Legislature with the power to waive sovereign immunity. *See* art. X, § 13, Fla. Const. ("Provision may be made by general law for bringing suit against the state as to all liabilities now existing or hereafter originating.").

In 1973, the Legislature enacted section 768.28 waiving sovereign immunity with respect to tort claims, "but only to the extent specified in this act."

§ 768.28(1), Fla. Stat.  In pertinent part, subsection (5) provides that in the absence

of a "further act of the Legislature," known as a claims bill, the damages that may

be paid by the State, its agencies, or subdivisions are limited to $100,000 for a

claim or judgment by any one person and that all claims or judgments "arising out

of the same incident or occurrence" may not exceed $200,000.  At the time of the

2010 mass shooting, the statute provided in pertinent part as follows:

> (1) In accordance with s. 13, Art. X of the State Constitution, the state, for itself and for its agencies or subdivisions, hereby waives sovereign immunity for liability for torts, but only to the extent specified in this act.  Actions at law against the state or any of its agencies or subdivisions to recover damages in tort for money damages against the state or its agencies or subdivisions for injury or loss of property, personal injury, or death caused by the negligent or wrongful act or omission of any employee of the agency or subdivision while acting within the scope of the employee's office or employment under circumstances in which the state or such agency or subdivision, if a private person, would be liable to the claimant, in accordance with the general laws of this state, may be prosecuted subject to the limitations specified in this act. . . .

> . . . .

> (5) The state and its agencies and subdivisions shall be liable for tort claims in the same manner and to the same extent as a private individual under like circumstances, but liability shall not include punitive damages or interest for the period before judgment. *Neither the state nor its agencies or subdivisions shall be liable to pay a claim or a judgment by any one person which exceeds the sum of $100,000 or any claim or judgment, or portions thereof, which, when totaled with all other claims or judgments paid by the state or its agencies or subdivisions arising out of the same incident or occurrence, exceeds the sum of $200,000.*  However, a judgment or judgments may be claimed and rendered in excess of these amounts and may be settled and paid pursuant to this act up to $100,000 or $200,000, as the case

may be; and that portion of the judgment that exceeds these amounts may be reported to the Legislature, but may be paid in part or in whole only by further act of the Legislature.

§ 768.28(1), (5), Fla. Stat. (emphasis added).[1]

This case requires us to decide, as applied to this mass shooting, what the statute means when it limits the State's liability to a total of $200,000 for all claims or judgments "arising out of the same incident or occurrence," *id.*, after which claimants must seek additional compensation "by further act of the Legislature." *Id.*

## II.     Relevant Principles of Statutory Construction

The statute here does not define the key phrase "arising out of the same incident or occurrence." Accordingly, "the phrase should be accorded its plain and ordinary meaning, giving due regard for the context in which it is used." *Hampton v. State*, 103 So. 3d 98, 110 (Fla. 2012).

Only if there is any ambiguity in the statute would we resort to substantive rules of statutory construction. The two rules applicable to the certified question would require that we resolve any ambiguity by reading the statute narrowly, in the manner that limits the amount recoverable from the State without further action by

---

1. In 2010, subsection (5) was amended to raise the individual cap to $200,000 and the aggregate cap to $300,000, effective October 1, 2011. Ch. 2010-26, Laws of Fla.

the Legislature.  First, "[s]tatutes that alter the common law are narrowly construed."  *Hardee County v. FINR II, Inc.*, 221 So. 3d 1162, 1165 (Fla. 2017). Second, "[w]aivers of sovereign immunity must be construed narrowly in favor of the government."  *Id.*; *see Manatee County v. Town of Longboat Key*, 365 So. 2d 143, 147 (Fla. 1978); *see also Spangler v. Florida State Tpk. Auth.*, 106 So. 2d 421, 424 (Fla. 1958) (explaining that "[i]nasmuch as immunity of the state and its agencies is an aspect of sovereignty, the courts have consistently held that statutes purporting to waive the sovereign immunity must be clear and unequivocal" and that the narrow interpretation of waivers of sovereign immunity protect "the public against profligate encroachments on the public treasury").  No party has argued that this precedent is unsound.

## III.  DFS's Breach of Duty Argument

"The elements of a cause of action in tort are: (1) a legal duty owed by defendant to plaintiff, (2) breach of that duty by defendant, (3) injury to plaintiff legally caused by defendant's breach, and (4) damages as a result of that injury." *Estate of Rotell v. Kuehnle*, 38 So. 3d 783, 788 (Fla. 2d DCA 2010) (quoting *O'Keefe v. Orea*, 731 So. 2d 680, 684 (Fla. 1st DCA 1998)).  Most negligence claims involve a negligent actor (one who owes a legal duty and breaches that duty) directly causing injury for which a plaintiff seeks to recover damages.  This is because "[g]enerally, one has no duty to control the conduct of another to

prevent harm, and no duty to warn those who may be endangered by harmful conduct, including the criminal acts of a third person." 65 C.J.S., *Negligence* § 60 (2010) (footnotes omitted). However, "[a]n act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal." Restatement (Second) of Torts § 302B (1965). This theory of liability is often referred to as "derivative liability" and involves "wrongful conduct both by the person who is derivatively liable and the actor whose wrongful conduct was the direct cause of injury to another. The liability is derivative because it depends upon a subsequent wrongful act or omission." William D. Underwood & Michael D. Morrison, *Apportioning Responsibility in Cases Involving Claims of Vicarious, Derivative, or Statutory Liability for Harm Directly Caused by the Conduct of Another*, 55 Baylor L. Rev. 617, 619 (2003) (footnote omitted). Barnett's tort theory is that DCF is derivatively liable for Dell's criminal conduct, and the parties disagree as to whether the $200,000 limit in subsection (5) is linked to DCF's wrongful conduct or Dell's wrongful conduct.

DFS argues that the statutory phrase "incident or occurrence" refers to the negligent or wrongful acts or omissions of its employees, the "state actors," as held by the Fourth District. Barnett disagrees, arguing that "incident or occurrence"

- 10 -

refers to Dell's crimes, which directly harmed Whyte-Dell and her children. On this issue, we agree with Barnett for three reasons.

First, to equate "negligent or wrongful act or omission" with "incident or occurrence" would negate the Legislature's decision to use different phrases in different parts of section 768.28. Section 768.28 does not limit liability to $200,000 for all claims arising out of the same "negligent or wrongful act or omission" of a state actor. Instead, it uses the phrase "negligent or wrongful act or omission" to describe the state actor's breach of duty in subsections (1) and (14); uses the phrases "act or omission," "acts or omissions," and "act, event or omission" to describe the state actor's breach of duty in subsection (9); and uses the phrases "acts or omissions" and "act or omission" to describe the State's breach of duty in subsections (14) and (19). If the Legislature wanted to link the limit of liability to a state actor's breach of duty, it knew how to describe the breach, having done so repeatedly with the "act or omission" language. Use of the words "incident or occurrence" in subsection (5) signals that the language means something different.

Second, the definitions cited by Barnett show that the words "incident" and "occurrence" more naturally and reasonably include the point at which damages are inflicted, not just the (potentially remote) point at which the state defendant's

negligent or wrongful act occurs. "Incident" is defined as "an individual occurrence or event," *Dictionary.com*, https://www.dictionary.com/browse/incident?s=t (last visited Sept. 17, 2020); "an occurrence of an action or situation that is a separate unit of experience," *Merriam-Webster*, https://www.merriam-webster.com/dictionary/incident (last visited Sept. 17, 2020); or "a discrete occurrence or happening; an event," *Black's Law Dictionary* 911(11th ed. 2019). The word "occurrence" is defined as "something that takes place[;] the action or process of happening or taking place," *Webster's Third New International Dictionary* 1561 (1981); "the action, fact, or instance of occurring," *Dictionary.com*, https://www.dictionary.com/browse/occurrence?s=t (last visited Sept. 17, 2020); or "something that occurs; the action or fact of happening or occurring," *Merriam-Webster*, https://www.merriam-webster.com/dictionary/occurrence (last visited Sept. 17, 2020). What these definitions all share in common is action, a happening, an event. The words work to describe Dell's immediate harm-causing *actions*, which could also be described as an *event*, but not to describe DCF's alleged omissions and failures to act. With respect to DCF, Barnett alleged that "[d]espite the growing number of domestic disturbance calls and . . . DCF's obligations to comply with all state and federal laws and regulations as well as departmental/district procedures regarding the safety of minor children . . . DCF *failed to adequately investigate and protect* the

- 12 -

Barnett Children." This is typical of derivative liability cases, which usually involve omissions, or failures to act, and allegations that if the correct actions had been taken, those actions would have prevented the harm caused by the *action* of the second tortfeasor (the immediate harm-causing *event*). Because the definitions of "incident" and "occurrence" match the injury-causing event in all cases and do not match the omissions or wrongful conduct of the initial tortfeasor in a derivative liability case, we conclude that the phrase "injury or occurrence" is most reasonably understood as referring to the injury-causing event.

Finally, the relevant statutory phrase is "claim or judgment . . . arising out of the same incident or occurrence" and the text's use of the words "arising out of" also are best understood to include the immediate injury-causing event, not just the negligent omissions that allegedly gave rise to that event. The object of "arising out of" in the statute is the plaintiff's "claim or judgment." No claim exists, and no judgment can occur, until the cause of action accrues by completion of the last element—"damages as a result of [an] injury." *Kuehnle*, 38 So. 3d at 788 (quoting *O'Keefe*, 731 So. 2d at 684). "Arise" is defined as "to begin to occur or to exist[;] to come into being." *Merriam-Webster*, https://www.merriam-webster.com/dictionary/arise (last visited Sept. 17, 2020). Because the claim does not "come into being" or "begin to exist" until the last element accrues, the text is most reasonably read as including the "incident or occurrence" that caused the last

- 13 -

element and the cause of action to accrue—the injury-causing event, that is, the event at which damages are actually inflicted.

Having determined that the incident or occurrence in this derivative liability case is the injury-causing event, the next question is whether, in the context of a mass shooting incident involving multiple deaths or injuries, the "same incident or occurrence" is referring to the whole event or criminal episode, i.e., the "shooting incident," or whether the shooting of each victim constitutes a separate incident or occurrence.

## IV.    One "Incident or Occurrence" or Multiple Incidents?

Barnett argues that the shooting of each individual victim should be viewed as a separate "incident or occurrence," relying primarily on Florida cases that either (1) involved distinct and separate events that could only be reasonably viewed as separate incidents, *see, e.g.*, *Pierce v. Town of Hastings*, 509 So. 2d 1134, 1135 (Fla. 5th DCA 1987) (holding that separate counts of false imprisonment and malicious prosecution arising from arrests separated by more than a month for violations of a county ordinance that were also separated by an equivalent amount of time constituted separate incidents for purposes of applying subsection (5)); *Zamora v. Fla. Atl. Univ. Bd. of Trs.*, 969. So. 2d 1108, 1114 (Fla. 4th DCA 2007) (ruling that an age discrimination claim and a separate cause of action for retaliation, based upon action taken after the claimant filed the age

discrimination complaint, constituted separate incidents for purposes of applying subsection (5)), or (2) interpreted the word "occurrence" in an insurance contract, *see, e.g.*, *Koikos v. Travelers Ins. Co.*, 849 So. 2d 263, 273 (Fla. 2003) (holding that the shooting of each individual victim at an insured's property during the same criminal episode constituted a separate "occurrence" for purposes of recovery under the terms of the insurance contract); *N.H. Ins. Co. v. RLI Ins. Co.*, 807 So. 2d 171, 171-72 (Fla. 3d DCA 2002) (same). The first group of cases, that could only be reasonably viewed as involving separate incidents, are not analogous to the facts of this case, do not address the question at issue in this case, do not analyze the text of subsection (5) in a way that sheds any light on the issue before us, and in no way aid our analysis.

With respect to the second group of cases, the insurance contract cases, Barnett's argument ignores the "fundamental principle of statutory construction (and, indeed, of language itself) that the meaning of a word cannot be determined in isolation, but must be drawn from the context in which it is used." *Advisory Op. to Governor re Implementation of Amendment 4, the Voting Restoration Amendment*, 288 So. 3d 1070, 1079 (Fla. 2020) (quoting *Textron Lycoming Reciprocating Engine Div., Avco Corp. v. United Auto., Aerospace, Agric. Implement Workers of Am., Int'l Union*, 523 U.S. 653, 657 (1998)). The question presented in *Koikos* focused on how the word "occurrence" was "defined in the

policy of liability issued by Travelers to Koikos, the insured." 849 So. 2d at 266. The majority answered this question by analyzing the word "accident," a word central to the policy's definition of "occurrence" and which the majority found to be controlling in its analysis of the policy language. *Id.* at 266-71. Subsection (5) does not use the word "accident," and given the wholly different contexts, we find the argument based upon the insurance policy cases unhelpful and unpersuasive. We also note that any ambiguity in an insurance contract must be "liberally construed in favor of coverage and strictly against the insurer." *Gov't Emps. Ins. Co. v. Macedo*, 228 So. 3d 1111, 1113 (Fla. 2017) (quoting *Wash. Nat'l Ins. Corp. v. Ruderman*, 117 So. 3d 943, 950 (Fla. 2013)). By contrast, and as already discussed, ambiguities in this sovereign-immunity-waiving statute must be "construed narrowly in favor of the government." *FINR II, Inc.*, 221 So. 3d at 1165.

Finally, Barnett focuses on the word "same," arguing that it modifies the phrase "incident or occurrence" and that because each victim was shot "at different points in time, in different parts of the home," and was "a specific targeted individual," we should view each separate shooting as a different event. Barnett's juxtaposition of the words "same" and "different" is not helpful because one could also accurately say that all victims were targeted by the same person, in the same house, at the same time, with the same weapon, in a single criminal episode. *See*

- 16 -

*e.g.*, *State v. Sousa*, 903 So. 2d 923, 924, 927 (Fla. 2005) (describing "a shooting spree at a greyhound track and involved three victims, with two of the victims being shot by Sousa in rapid succession" as "a single criminal episode"); *Francis v. State*, 808 So. 2d 110, 136 (Fla. 2001) ("This Court has repeatedly held that where a defendant is convicted of multiple murders, arising from the *same* criminal episode, the contemporaneous conviction as to one victim may support the finding of the prior violent felony aggravator as to the murder of another victim.") (emphasis added); *James v. State*, 695 So. 2d 1229, 1231, 1236 (Fla. 1997) (describing the murder of one victim by strangulation in one room followed by sexual assault, and then murder of a second victim by stabbing in a second room, and followed by the kidnapping of a third victim confined in a third room as a "single criminal episode").

The phrase "same incident or occurrence" is most reasonably understood as referring to the criminal (more broadly, injury-causing) event as a whole, not to the smaller segments of time and action that make up the crime against each individual victim, because this is the way that we commonly talk about this type of tragic occurrence—as a single event with multiple victims. Additionally, this reading fits most naturally given the context of subsection (5), which is designed to limit the State's liability to a set amount for all claims arising out of an "incident or occurrence," after which all claimants must seek additional compensation from the

- 17 -

Legislature.  *See* § 768.28(5) (limiting the State's liability to $100,000 per person with an aggregate cap of $200,000 for "all . . . claims or judgments paid by the state or its agencies or subdivisions arising out of the same incident or occurrence").  As argued by DFS, Barnett would essentially have us write this aggregate cap out of the statute altogether for most claims involving a criminal episode with multiple victims.  We cannot rewrite the statute and do not view Barnett's reading as reasonable.

However, to the extent that the phrase "incident or occurrence" is ambiguous and could reasonably be read as referring either to the overall incident or to the smaller segments of time and action that constitute the individual crimes against each separate victim, this would lead us to the substantive rules of statutory construction that statutes altering the common law "are narrowly construed" and that "[w]aivers of sovereign immunity must be construed narrowly in favor of the government."  *FINR II, Inc.*, 221 So. 3d at 1165.

In sum, the claims stemming from the mass shooting of Dell's victims arose from the same incident or occurrence and are therefore subject to the $200,000 aggregate cap for damages paid by the State, its agencies, or subdivisions.  Subsection (5) does not prevent Barnett and Nelson from obtaining a judgment in excess of the sovereign immunity damage caps set forth therein.  The caps do,

however, limit the amount of the recovery that the State—in the absence of a claims bill—shall be liable to pay without further act by the Legislature.

## CONCLUSION

Today's decision in no way devalues the lives of those injured or killed as a result of mass shootings, or the harm suffered as a result of such tragedies. It is a decision that is rendered within the narrow confines of Florida law relating to the Legislature's limited waiver of sovereign immunity. Further, nothing precludes the parties from seeking a claims bill from the Legislature for compensation in excess of the sovereign immunity damage caps in subsection (5).

For the reasons expressed, we answer the rephrased certified question in the affirmative and approve the result reached in the Fourth District Court of Appeal.

It is so ordered.

CANADY, C.J., and POLSTON, LABARGA, LAWSON, and MUÑIZ, JJ., concur.
COURIEL and GROSSHANS, JJ., did not participate.

NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING MOTION AND, IF FILED, DETERMINED.

Application for Review of the Decision of the District Court of Appeal – Certified Great Public Importance

Fourth District - Case No. 4D17-2840

(Palm Beach County)

H. T. Smith of the Law Offices of H. T. Smith, P.A., Miami, Florida; John W. McLuskey and Lisa A. Riddle of McLuskey, McDonald & Hughes, P.A., Miami, Florida; and Lauri Waldman Ross of Ross & Girten, Miami, Florida,

     for Petitioner Michael Barnett

Vincent E. Miller of the Law Offices of Vincent E. Miller, P.A., Delray Beach, Florida,

     for Petitioner Leroy Nelson, Jr.

Daniel R. Russell, William D. Hall, III, Marc W. Dunbar, and Peter M. Dunbar of Dean Mead & Dunbar, Tallahassee, Florida,

     for Respondent State of Florida Department of Financial Services

Michael P. Spellman and Jeffrey D. Slanker of Sniffen & Spellman, P.A., Tallahassee, Florida, and Kraig Conn, Florida League of Cities, Inc., Tallahassee, Florida,

     for Amicus Curiae Florida League of Cities

Herbert W.A. Thiele, County Attorney, Tallahassee, Florida,

     for Amicus Curiae Florida Association of County Attorneys

Frances Guasch De La Guardia and Suzanne M. Aldahan of Holland & Knight LLP, Miami, Florida; and Miriam Soler Ramos, City Attorney, Coral Gables, Florida,

     for Amicus Curiae City of Coral Gables